**In re GRAND JURY PROCEEDINGS INVOLVING BERKLEY AND COMPANY, INC., and others.**

Misc. 3–79–3.

United States District Court,
D. Minnesota,
Third Division.

March 6, 1979.

On Motion to Reconsider March 27, 1979.

---

Richard E. Vosepka, Jr., Asst. U. S. Atty., Minneapolis, Minn., for Government.

Leonard J. Keyes, St. Paul, Minn., Richard B. Solum, Alan G. Cunningham, Bruce F. Thompson, Allen I. Saeks, Roger J. Magnuson, Minneapolis, Minn., for defendants.

DEVITT, Chief Judge.

## FACTS

Berkley and Company, Inc. (Berkley) and a number of individuals associated with that company are the apparent targets of an extensive investigation by United States Customs agents for possible customs fraud. The United States Attorney intends to present evidence accumulated by the Customs agents to the Minnesota federal grand jury. Much of that evidence was obtained through a seizure, pursuant to a warrant, of about 48 boxes of documents from Berkley's corporate headquarters in Spirit Lake, Iowa, on December 12, 1978. The government obtained other documents from a former Berkley employee, who may have stolen those documents from the company.

Berkley now moves: (1) to suppress the evidence obtained as a result of the December 12, 1978 seizure; (2) in the alternative, to order the grand jury not to review corporate documents protected by the attorney-client privilege; (3) to order the government to provide it with copies of the documents allegedly stolen by the former corporate employee; and (4) to adjudge an assistant United States Attorney and a United States Customs Agent in contempt of court. With the exceptions noted below, these motions are denied.

This case has a rather complicated procedural background which is relevant to the present motions. In January of 1979 Berkley brought motions to suppress the evidence obtained in the December 12 seizure and to have 279 of those documents declared privileged as communications between attorney and client. These motions were brought in the Northern District of Iowa pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, which permits "[a] person aggrieved by an unlawful search and seizure [to] move the district court for the district in which the property was seized for the return of the property . . . ." Prior to the Iowa court's ruling on the motions, the United States Attorney attempted to submit the documents to the Minnesota federal grand jury. Berkley requested Magistrate McPartlin to issue an order halting the grand jury investigation until the Iowa federal court ruled on its motions, and on February 7, 1979, the magistrate issued such an order. Shortly thereafter, on February 9, Judge McManus of

the Iowa court did rule on Berkley's motions. Judge McManus, however, refused to reach the merits of those motions. Rather, he held that the most prudent course was for the trial court to decide them and that Berkley would suffer no irreparable harm if the motion to suppress was decided by the trial court rather than by him. Berkley immediately brought the present motions before this court, claiming that this court is the trial court and thus is entitled to decide the present motions.

## DISCUSSION

### The Rule 41(e) Motion

Berkley's motion to suppress the documents obtained in the December 12 seizure is based on Rule 41(e) of the Federal Rules of Criminal Procedure. The threshold issue with respect to this motion is whether this court can rule on the Rule 41(e) motion at the present time, prior to indictment. The language of Rule 41(e) is not clear on this question. As quoted earlier, it provides that such a motion can be made prior to indictment in the district where the property was seized, here the Northern District of Iowa. It goes on to state that "If a motion for return of property is made or comes on for hearing *in the district of trial after indictment* or information is filed, it shall be treated also as a motion to suppress under Rule 12." (emphasis supplied). Rule 41(e), however, is silent on whether this court, which is located in the district where any future trials probably would occur, can rule on the motion prior to indictment.

Berkley asserts that the silence of Rule 41(e) as to this court's authority to decide its motion prior to indictment should not be read as precluding this court from acting. The company makes two arguments supporting that assertion. First, Berkley correctly argues that there is a strong policy underlying Rule 41(e) in favor of having the trial court rule on the legality of searches and seizures. This policy, claims Berkley, would be frustrated if the rule was interpreted as allowing pre-indictment Rule 41(e) motions to be brought only in the district where the property was seized and

not in the district of trial. Second, Berkley contends that if this court refuses to rule on its motion it will be unfairly caught between inconsistent judicial rulings, with the Iowa court deferring to this court and this court refusing to act. While both of these arguments have some appeal, they lose their attractiveness when closely scrutinized.

The 1972 Advisory Committee Notes make clear that the policy of Rule 41(e) is "to require the motion to suppress evidence to be made in the trial court" and "to have all pretrial motions disposed of in a single court appearance" before the trial court pursuant to Rule 12. Only when there is a clear violation of the Fourth Amendment and the aggrieved party is suffering irreparable harm should the pre-indictment Rule 41(e) remedy be invoked. *See, e. g., United States v. 1617 Fourth Ave. S.W.,* 406 F.Supp. 527 (D.Minn.1976). It was on these principles that the Iowa court deferred to the trial court. These same principles lead inevitably to the conclusion that this court also is not the proper one to rule, prior to indictment, on the legality of the December 12 seizure. This court is located in the district where any future criminal trials probably would occur, but it is not the trial court. If any indictments are handed down, there is no guarantee that this court, rather than other courts in this district, would be assigned the resulting criminal trials. Thus, if this court was to rule on Berkley's Rule 41(e) motion, it would frustrate the policies underlying the rule just as surely as had the Iowa court ruled on the motion. Moreover, Rule 41(e) contains no express authorization for this court to rule prior to indictment. Berkley has already had its shot at a pre-indictment Rule 41(e) remedy, and the Iowa court, finding no irreparable harm or clear constitutional violation, refused to grant that remedy and deferred to the trial court.

There is a second important reason why this court should not rule on Berkley's motion to suppress at the present time. The Rule 41(e) motions brought in Iowa and

in this court already have delayed the grand jury investigation for one month, and if this court considered the merits of Berkley's motion, a further delay would occur. The Supreme Court in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), in holding that the exclusionary rule does not apply to grand jury proceedings, made clear that grand jury investigations must not be impeded by minitrials and preliminary hearings on Fourth Amendment questions. *Id.* at 349–52, 94 S.Ct. 613. That has also long been the policy in this circuit. *See Truchinski v. United States*, 393 F.2d 627 (8th Cir. 1968); *West v. United States*, 359 F.2d 50 (8th Cir. 1966). Thus a further delay of the grand jury investigation to decide Berkley's Rule 41(e) motion is impermissible.

*Motion to Provide Copies of Stolen Documents*

The government intends to present certain documents to the grand jury that it obtained from a former employee of Berkley. Berkley claims those documents were stolen by the former employee but does not allege that the employee was acting on behalf of the government when he stole the documents. Berkley now moves for an order compelling the government to provide it with copies of the documents so the target defendants can decide whether they should testify before the grand jury. In essence, Berkley is requesting pre-indictment discovery of the government's file. While the government is free to provide such discovery, this court cannot compel it to do so.

■ Rule 16 of the Federal Rules of Criminal Procedure limits discovery to "defendants," which of necessity excludes discovery under the Rules prior to indictment or information. Recognizing this, Berkley asks the court to invoke its inherent supervisory power over the grand jury. The company and the individual target defendants claim that without disclosure they will be denied effective assistance of counsel, because the decision of whether and how to testify before the grand jury would be made in a vacuum. The logic of Berkley's contentions is somewhat difficult to perceive.

■ This court's supervisory power normally will be invoked only to correct abusive practices by the grand jury or to protect substantial rights of a witness. *See, e. g. United States v. Dionisio*, 410 U.S. 1, 17–18, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972). Here, no abusive or illegal practices by the grand jury are claimed; the allegedly stolen documents are legally in possession of the government and may properly be considered by the grand jury. *Compare United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Furthermore, target defendants' right to effective assistance of counsel is not nullified by the government's refusal to allow discovery prior to their testifying before the grand jury. Grand jury proceedings are not adversary and a witness does not have all the constitutional protections afforded a defendant at trial. A witness can invoke his right against self incrimination and may have his attorney present outside the grand jury room to consult with concerning that right. *See United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). However, he does not have the right to cross-examine witnesses or present evidence in his own behalf. *See, e. g., United States v. Levinson*, 405 F.2d 971 (6th Cir. 1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1746, 23 L.Ed.2d 219 (1969). Similarly, a grand jury witness has no constitutional right to be informed in advance of the evidence and questions the grand jury will present to him. As the Eighth Circuit has noted, "the grand jury is imbued with broad inquisitorial powers and is not obliged to furnish witnesses testifying before it a program defining the crime to be investigated or the persons against whom an accusation is sought." *LaRocca v. United States*, 337 F.2d 39, 43 (8th Cir. 1964). This court therefore will not compel the government to provide copies of the documents to the target defendants prior to their being called to testify before the grand jury.

*The Attorney-Client Privilege*

■ Berkley claims that approximately 280 of the documents seized on December 12, 1978, and a number of the documents obtained from Berkley's former employee, cannot be submitted to the grand jury because they are protected by the attorney-client privilege. The company appears to be correct in its assertion. While illegally seized evidence can be considered by the grand jury, the Supreme Court has made clear that privileged evidence cannot. *See, e.g., United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 38 L.Ed.2d 561 (1973); 1 C. Wright, *Federal Practice and Procedure* § 104, at 163 (1969). The Eighth Circuit has expanded this rule to include documents constituting attorneys' work product. *See In re Grand Jury Proceedings*, 473 F.2d 840 (8th Cir. 1973).

■ The protection afforded by the privilege, however, does not apply to the documents obtained from Berkley's former employee, for the privilege does not apply to stolen or lost documents. As Wigmore notes:

> All *involuntary* disclosures, in particular, through the loss or theft of documents from the attorney's possession, are not protected by the privilege, on the principle that, since the law has granted secrecy so far as its own process goes, it leaves to the client and attorney to take the measures of caution sufficient to prevent being overheard by third parties. The risk of insufficient precautions is upon the client. This principle applies equally to documents.

8 *Wigmore on Evidence* § 2325 (McNaughton rev.1961) (emphasis in original); *accord, e. g. Schwartz v. Wenger*, 267 Minn. 40, 124 N.W.2d 489 (1963). Thus the privilege is limited to the qualified seized documents.

■ The government, although it has not viewed the 280 documents Berkley claims are privileged, is suspicious that most if not all of those documents are not privileged, and requests an adversary hearing where the privileged nature of each document can be argued. Berkley contends that disclosure of the documents to the government in such an adversary proceeding would destroy the purpose of the privilege. Berkley's point is well taken; the most judicious way to determine application of the privilege is through an in camera inspection by this court. *See, e. g., Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); *In re Fish & Neave*, 519 F.2d 116 (8th Cir. 1975). If after the in camera inspection the court is uncertain about the privileged status of any documents, it may at that time seek the guidance of the parties through an in camera adversary proceeding. *See United States v. Nixon*, 418 U.S. 683, 715 n.21, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

To assist this court in determining the privileged status of these documents, each party is directed to brief by March 12 the issue of the application of the attorney-client privilege and work product doctrine when the client is a corporation. Also, Berkley is directly to submit an additional brief by March 16 outlining why each individual document is privileged. A copy of this latter brief need not be given to the government.

*Other Matters*

Two final matters can be disposed of summarily. Berkley has moved to hold an Assistant United States Attorney and a United States Customs agent in contempt of court. The Customs agent, apparently under the direction of the Assistant United States Attorney, transported certain documents from the Northern District of Iowa to the District of Minnesota after the Iowa court issued its decision on Berkley's Rule 41(e) motion. Berkley asserts that these acts violated the order issued by Magistrate McPartlin on February 7, 1979. As will be discussed below, however, the relevant provisions of that order were effective only until "the Rule 41(e) motion has been determined" by the Iowa court. At the time the documents were transported to this district, therefore, the Magistrate's order was no longer in effect. Consequently, Berkley's motion must be denied.

The final matter for consideration is the present status of Magistrate McPartlin's February 7, 1979 order. That order by its terms expired when Judge McManus of the Northern District of Iowa issued his ruling on Berkley's Rule 41(e) motion, except for directives 3 and 7. Directive 3 is no longer at issue and directive 7 is superceded by the earlier discussion in this opinion on the attorney-client privilege. Therefore, the magistrate's order of February 7 is vacated. The second order issued by the magistrate on February 7, concerning the recording of grand jury proceedings, however, is still effective and is affirmed by this court.

Except as otherwise noted, Berkley's motions are DENIED.

## ON MOTION TO RECONSIDER

Berkley and Company asks this court to reconsider a portion of the memorandum and order of March 6, 1978. The portion to be reconsidered concerns the attorney-client privilege. Specifically, Berkley requests that the court reverse its position as to allegedly privileged documents disclosed to the government by Mr. Frank Devine. Mr. Devine is the former head of Berkley's Taiwan operations, which are presently being investigated by United States Customs agents and the federal grand jury. He obtained the documents while employed by Berkley but disclosed them to the government after Berkley fired him. Berkley characterizes Devine as a thief and refers to the documents as stolen, while the government portrays Devine as a good American who was merely performing his duty as a citizen by disclosing evidence of criminal activity to the government.

This court in its order of March 6 held that the documents were not protected by the privilege, relying on a passage in Dean Wigmore's treatise on evidence which stated that involuntary disclosures of privileged documents, such as when stolen, are not protected by the privilege. Dean Wigmore's position is based on the principle that the law will not require the client or his attorney to disclose privileged matter, but the client assumes the risk that some third party, such as Devine, will obtain knowledge of the privileged communications and communicate that knowledge. See 8 *Wigmore on Evidence* §§ 2325–26 (McNaughton rev. 1961). In Wigmore's opinion, this principle applies equally to stolen privileged documents and to surreptitiously overheard privileged conversations. While the cases concerning stolen privileged documents are rare, eavesdropper cases are somewhat more common, and the modern trend appears to be away from Wigmore and toward a principle that the privileged status is not lost when the attorney and client take reasonable precautions to ensure confidentiality but nonetheless are overheard by a surreptitious eavesdropper. *see, e. g.,* 2 J. Weinstein & M. Burger, *Weinstein's Evidence* ¶ 503(b)[02] (1977). The same principle presumably would apply to stolen documents.

It is difficult to characterize Devine's role with respect to the documents at issue here. In a sense, the documents were stolen by Devine, for he presumably was not authorized to retain the documents after he left Berkley's employ. To the extent the documents can be viewed as stolen, following the modern trend mentioned above, they should not lose the protection of the privilege. Devine also can be characterized as an employee who, for whatever reason, decided to disclose the documents to the government even though that was not in the best interests of the corporation. To this extent, Devine's actions are at least roughly analogous to those of an attorney who acts in bad faith toward his client and discloses privileged communication without the client's approval and against the client's interest. Even Wigmore recognizes that the privilege is not lost in this analogous situation. *Wigmore, supra,* at § 2325(1). Thus, modern precedent would seem to suggest that the documents disclosed by Devine should not lose their privileged status simply because of the manner in which they were disclosed. The government therefore is directed to turn the documents over to the court for an in camera inspection to determine the privileged status of each document.

A second matter requires discussion with respect to the attorney-client privilege. One universally recognized prerequisite to a finding of a privilege is that the communication be made and maintained in confidence. *E. g., In re Horowitz*, 482 F.2d 72, 82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). The burden is on the client to establish this prerequisite. *Id.* When the client is a corporation and the allegedly privileged documents are corporate records, the corporation must "provide information about its own internal security practices which would support a finding of confidentiality." *Weinstein, supra,* ¶ 503(b)[04], at p. 503–47 (adopted by the Eighth Circuit in *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977) (en banc)). For example, the corporation must show that the allegedly privileged documents were available to corporate employees only on "a fairly firm 'need to know'" basis. *Weinstein, supra,* at 503–47. Disclosure of the documents within the corporation must be limited to those employees "who, because of the structure of the corporation, must know of the communication in order to insure that the attorney is obtaining both full and accurate information." *Id.* at 503–46. Also, the corporation must establish that the documents were not intermingled with other unprivileged, non-confidential corporate documents, but instead were segregated or otherwise clearly identified as privileged, confidential materials. *See, e. g., United States v. Kelsey-Hayes Wheel Co.*, 15 F.R.D. 461, 465 (E.D.Mich.1954).

Berkley has presented this court, so far as we can ascertain, with no evidence of its internal security measures with respect to privileged documents, either at its Spirit Lake, Iowa, or Taiwan offices. Berkley is allowed ten days to provide such information. The government may also provide information, if it has any, as to the manner in which Berkley maintains its records.

Subject to the limitations stated above, Berkley's motion is GRANTED.