**In the Matter of the Application of SEN-TINEL GOVERNMENT SECURITIES and Sentinel Financial Instruments to Direct the Return of Seized Property.**

**No. M9–150.**

United States District Court,
S. D. New York.

Jan. 28, 1982.

John S. Martin, Jr., U. S. Atty., S.D.N.Y., New York City, for the U.S.; Charles M. Carberry, Asst. U.S. Atty., New York City, of counsel.

Wachtell, Lipton, Rosen & Katz, New York City, for Sentinel; Bernard W. Nussbaum, Paul Vizcarrondo, Jr., Claude M. Tusk, Eric M. Roth, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Movants Sentinel Government Securities ("SGS") and Sentinel Financial Instruments ("SFI") apply pursuant to Rule 41(e), F.R. Crim.P.,[1] for an order directing the return

---

1. The rule provides:

"Motion for Return of Property. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property

which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for

of property seized under warrant. For the following reasons the motion is denied.

SGS and SFI are brokers and dealers in money market instruments and government securities. Certain aspects of their operations have attracted the interest of the Internal Revenue Service. SFI is presently the target of a grand jury inquiry into whether it has engaged in a widespread false trading operation, manufacturing documents so that customers could reduce their income tax liability by means of apparent "straddles." SGS is the target of an inquiry into comparable falsification of documents in order to provide tax losses to its limited partners. The grand jury investigations were triggered by information received from a confidential informant in a position to furnish the Government with detailed descriptions of the companies' activities. No indictments have as yet been voted.

On November 17, 1981 a number of IRS agents executed search warrants issued by a magistrate of this Court and removed numerous files from the SFI and SGS offices at 100 Wall Street in Manhattan.

SGS and SFI attack the search warrants as general warrants, violative of the Fourth Amendment as construed in such cases as *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976); *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965), quoting *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927); *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 325, 99 S.Ct. 2319, 2324, 60 L.Ed.2d 920 (1979); *United States v. Abrams*, 615 F.2d 541 (1st Cir. 1980); *Application of Lafayette Academy, Inc.*, 610 F.2d 1 (1st Cir. 1979); *United States v. Roche*, 614 F.2d 6 (1st Cir. 1980); *VonderAhe v. Howland*, 508 F.2d 364, 369 (9th Cir. 1974) (per Leonard Moore, Ct. J., sitting by designation); and *United States v. Marti*, 421 F.2d 1263 (2d

Cir. 1970), *cert. denied*, 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971). The Government argues that its seizure of these quantities of business records, in execution of the warrants in the forms issued, is sanctioned by *National City Trading Corp. v. United States*, 635 F.2d 1020 (2d Cir. 1980), and *United States v. Brien*, 617 F.2d 299 (1st Cir.), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980). Movants respond that these latter cases apply only where the activities of the entity whose documents are seized are entirely illicit, so that there is no basis for segregating between legitimate and illegitimate documentation, whereas in the case at bar, assuming *arguendo* illegal operations, there is also undisputed evidence of substantial legal operations by SGS and SFI, and the documents sought for use in the ongoing grand jury investigation are segregable from those documents that are not.

Able briefs of counsel were filed on the original motion, and counsel have responded with equal skill to particular questions put by the Court in its memorandum opinion of January 5, 1982. Substantial questions arise which, in the event of an indictment, will require decision by the trial court within the context of a motion to suppress under Rule 12(b), F.R.Crim.P. But my reading of the Second Circuit's most recent authority considering Rule 41(e), *Standard Drywall, Inc. v. United States*, 668 F.2d 156 (2d Cir., 1982), persuades me that these issues need not and should not be reached at this time.[2]

In *Standard Drywall*, federal agents executed a warrant to search the offices of that company, and seized various books and records for presentation to a grand jury that was investigating criminal violations allegedly committed by Standard Drywall and other companies in the construction industry. Prior to an indictment being vot-

hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12."

**2.** Neither party referred the Court to *Standard Drywall*. I intend no criticism of counsel. The case had not been decided when the original briefs were filed, and was handed down the same day this Court asked counsel to address other questions.

ed upon, Standard Drywall filed a motion under Rule 41(e) for the return of all its property seized pursuant to the search warrant, alleging violation of Fourth Amendment protections. Judge Bramwell of the Eastern District of New York denied Standard Drywall's motion, relying on *In re Grand Jury Proceedings Involving Berkley & Co.*, 466 F.Supp. 863, 866 (D.Minn.1979), for the proposition that Standard Drywall was required to demonstrate that it would suffer irreparable harm if the documents seized were not returned at once, and had failed to do so. In that connection, the Government offered to provide to Standard Drywall copies of all the documents seized from its offices. Judge Bramwell viewed this offer as undermining Standard Drywall's contention that it could not conduct business without these documents, thereby refuting any claim of irreparable harm. In these circumstances, Judge Bramwell reasoned (as paraphrased by the Second Circuit at 157) that the district court "need not balance any violation of Standard Drywall's Fourth Amendment rights against the need of the grand jury to consider all relevant evidence." Judge Bramwell postponed consideration of the merits of the Fourth Amendment claim "until such time as the initiation of a criminal proceeding necessitates such consideration in connection with a motion to suppress, brought under Rule 12(b)(3)," *ibid.*

Standard Drywall sought to take an appeal from Judge Bramwell's order. The Second Circuit held that the order was not appealable. It reached that conclusion by construing *Di Bella v. United States*, 369 U.S. 121, 131–32, 82 S.Ct. 654, 660–61, 7 L.Ed.2d 614 (1962), to limit appeals from orders denying pre-indictment Rule 41(e) relief to motions "for return of property brought by a movant with no connection to either an actual or potential criminal case, a person not suspected of anything who happened to have on his premises property pertinent to an investigation or prosecution of someone else," at 159. Because Standard Drywall did not fit within that category, the order denying its Rule 41(e) motion was not appealable.

In view of the Second Circuit's jurisdictional holding in *Standard Drywall*, it did not reach the merits of Judge Bramwell's ruling that, at least in the context of a preindictment motion, the movant must demonstrate irreparable harm. I am, therefore, at liberty to agree with Judge Bramwell's rationale, as well as that of Chief Judge Devitt in *Berkley & Co., supra*, upon which Judge Bramwell relied. In point of fact, I do so agree, since I find persuasive the reasoning of Judge Devitt, fully expressed in *Berkley* at 466 F.Supp. 866–67, and that of Judge Bramwell, as paraphrased by the Second Circuit in *Standard Drywall*. But the Second Circuit in *Standard Drywall*, addressing one aspect of the merits at least inferentially, observed with respect to the "irreparable harm" question at 157 n.2:

> "We seriously question whether, in the absence of seizure of some unique property or privileged documents, a party could ever demonstrate irreparable harm when the Government either provides the party with copies of the items seized or returns the originals to the party and presents the copy to the jury."

That footnote is pertinent to the case at bar because a comparable offer has been made by the Government to SGS and SFI, an offer which, the record indicates, has been at least partially implemented. It also appears from the record that although SFI and SGS understandably profess difficulties in doing so, the companies have in fact been able to continue doing business.

The Second Circuit's language in *Standard Drywall* is also significant, in my judgment, because of the reasons assigned for non-appealability of pre-indictment Rule 41(e) motions. Judge Newman wrote:

> "We think the cases that have dismissed appeals by those under investigation, even in the absence of a pending criminal prosecution, have correctly applied the principles of *DiBella*. Where, as here, the party moving for return of seized property is the subject of a grand jury inquiry, allowance of an appeal from denial of the

motion would interfere with the grand jury proceedings, see *United States v. Calandra*, 414 U.S. 338, 349–50 [94 S.Ct. 613, 620–21, 38 L.Ed.2d 561] (1974), and permit piecemeal appeals, see *Cobbledick v. United States*, 309 U.S. 323, 325 [60 S.Ct. 540, 541, 84 L.Ed. 783] (1940). Plainly this is not a case, of the sort contemplated in *United States v. Ryan*, 402 U.S. 530, 533 [91 S.Ct. 1580, 1582, 29 L.Ed.2d 85] (1971), where denial of review 'would mean that the Government might indefinitely retain the property without any opportunity for the movant to assert on appeal his right to possession.' The term of the grand jury is limited. If its inquiry results in indictment, the lawfulness of the seizure will be fully considered upon a motion to suppress, and any ruling adverse to the defendant will be reviewable upon appeal from a final judgment; if the grand jury declines to indict the movant, or adjourns without indicting it, its property will most likely be returned, and if not, it can initiate an independent proceeding for its return. *Cf. Dickhart v. United States*, 16 F.2d 345 (D.C.Cir.1926) (motion for return of seized property after search warrant quashed and defendant discharged)." at 158 (footnotes omitted).

Just as allowance of an appeal from denial of a motion "would interfere with the grand jury proceedings," so would granting of the motion itself, a consideration stressed by Judge Devitt at the district court level in *Berkley & Co., supra*, in a comparable analysis which also relied upon *Calandra:*

"There is a second important reason why this court should not rule on Berkley's motion to suppress at the present time. The Rule 41(e) motions brought in Iowa and in this court already have delayed the grand jury investigation for one month, and if this court considered the merits of Berkley's motion, a further delay would occur. The Supreme Court in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), in holding that the exclusionary rule does not apply to grand jury proceedings, made clear that grand jury investigations must not be impeded by minitrials and preliminary hearings on Fourth Amendment questions. *Id.* at 349–52, 94 S.Ct. 613 [at 620–22]. That has also long been the policy in this circuit. *See Truchinski v. United States*, 393 F.2d 627 (8th Cir. 1968); *West v. United States*, 359 F.2d 50 (8th Cir. 1966). Thus a further delay of the grand jury investigation to decide Berkley's Rule 41(e) motion is impermissible." 466 F.Supp. at 866–67.

■ I hold that on the facts of this case, SGS and SFI, as targets in an ongoing grand jury investigation, have not demonstrated irreparable harm entitling them to relief under Rule 41(e); and that consideration of their Fourth Amendment claim should await the return of an indictment (if that comes to pass), at which time the claim will take the form of a motion to suppress under Rule 12(b)(3).

I am mindful of the present movants' contention that the return of an indictment, based upon unconstitutionally seized evidence, would constitute irreparable harm in and of itself. Movants argue (reply brief at 21) that "the classic statement of the irreparable harm facing Sentinel as a result of the government's illegal search" was articulated by Judge Frank in *In re Fried*, 161 F.2d 453, 458–59 (2d Cir.), *cert. dismissed*, 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384 (1947). In *Fried* the Second Circuit reversed in part the district court's order denying an application for relief under Rule 41(e). Judge Frank described the stigmatizing effect of an indictment, and stated that prosecutorial discretion in the institution of criminal proceedings "should surely not extend so far as to preclude judicial interference with a prosecutor's aim to induce an indictment by offering to a grand jury evidence which is the product of illegal acts of federal officers."

It is not entirely clear how closely the facts of *Fried* resemble those in the case at bar, where the grand jury investigation into SFI's and SGS's activities were triggered by the revelations of a well-placed confidential informant, prior to the execution of the

search warrant giving rise to the instant motions. In *Fried*, the search and seizure complained of were contemporaneous with the arrest of the movant by FBI agents upon a warrant issued on a verified complaint. See *Application of Fried*, 68 F.Supp. 961, 962 (S.D.N.Y.1946). "No action had then been taken before a grand jury with respect to appellants; nor has there been any since then." *In re Fried, supra*, at 161 F.2d 453. *Fried* may, therefore, be distinguishable on the facts. It is also worth noting that Judge Frank's opinion elicited a rather grudging concurrence, "upon a very limited ground," from Judge Learned Hand ("The protection of the individual from oppression and abuse by the police and other enforcing officers is indeed a major interest in a free society; but so is the effective prosecution of crime, an interest which at times seems to be forgotten." 161 F.2d at 465), and a dissent from Judge Augustus N. Hand, 161 F.2d at 465–66. *Fried* antedates *Calandra, supra*, in which the Supreme Court specifically held that the Fourth Amendment exclusionary rule did not apply to grand jury proceedings; and post-*Calandra* citations of *Fried* have dealt with Rule 41(e) motions "prior to any suggestion of criminal proceedings," see, e.g., *Richey v. Smith*, 515 F.2d 1239, 1243 n.10, 1245 (5th Cir. 1975). The Second Circuit's current, post-*Calandra* view with respect to pre-indictment Rule 41(e) motions is expressed in *Standard Drywall, supra*. I cannot regard Judge Frank's reasoning in *Fried* as dispositive on the point.

■ Limiting my ruling to the facts of this case, I hold that where a company has become the target of an ongoing grand jury investigation as the result of the revelations of Government informants, and during the pendency of the grand jury investigation documents belonging to the target are seized pursuant to a search warrant, consideration of the target's Fourth Amendment claims must be deferred to a motion to suppress evidence under Rule 12, "in the absence of seizure of some unique property or privileged documents," *Standard Drywall, supra*, at 157 n.2, circumstances not here present.

## CONCLUSION

The motions for relief under Rule 41(e), F.R.Crim.P., are denied, without prejudice to a later assertion of the underlying Fourth Amendment claims if the grand jury returns an indictment.

It is So Ordered.