Alexander M. SHUKH, Plaintiff,

v.

SEAGATE TECHNOLOGY, LLC, a Delaware Limited Liability Company; Seagate Technology Inc., a Delaware corporation; Seagate Technology, a holding company of the Cayman Islands; and Unknown Owners and Assignees;, Defendants,

and

Seagate Technology, LLC, a Delaware Limited Liability Company; Seagate Technology, a holding company of the Cayman Islands; and Seagate Technology Inc., a Delaware corporation, Counter–Claimants,

v.

Alexander M. Shukh, Counter–Defendant.

Civ. No. 10–404 (JRT/JJK).

United States District Court, D. Minnesota.

Dec. 15, 2011.

988

Constantine John Gekas, Esq., and John C. Gekas, Esq., Gekas Law LLP; and James H. Kaster, Esq., Katherine M. Vander Pol, Esq., and Sarah W. Steenhook, Esq., Nichols Kaster, PLLP, for Plaintiff/Counter–Defendant.

Calvin L. Litsey, Esq., Chad Drown, Esq., Charles F. Knapp, Esq., David J.F. Gross, Esq., Elizabeth Cowan Wright, Esq., Jeya Paul, Esq., and Joseph A. Herriges, Esq., Faegre & Benson LLP, for Defendants/Counter–Claimants.

## ORDER AND MEMORANDUM

JEFFREY J. KEYES, United States Magistrate Judge.

This matter is before the Court on Plaintiff's Motion to Compel Production of

Documents and to Permit Questioning about Those Documents (Doc. No. 206). A hearing was held on the matter on November 9, 2011. (Doc. No. 232.) Appearances are noted on the record. One of the arguments raised by Plaintiff at the hearing (which was raised only in a cursory fashion in his brief) was that because Defendants Seagate Technology, LLC, Seagate Technology, Inc., and Seagate Technology (collectively "Seagate") waived privilege to five invention disclosures, there should be a subject-matter waiver as to any documents relating to the patents at issue in those disclosures. After the hearing, the Court requested further briefing on this issue. Plaintiff's supplemental brief was thereafter filed on November 22, 2011 (Doc. No. 239), and Defendants' supplemental response was filed on December 7, 2011. (Doc. No. 247.) Based on all the files, records, and proceedings herein, the Court grants in part Plaintiff's motion with respect to a limited subject-matter waiver, and denies in part Plaintiff's motion in all other respects.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel Production of Documents and to Permit Questioning about Those Documents (Doc. No. 206), is **GRANTED IN PART** to the extent that the Court finds a narrow subject-matter waiver based on Seagate's waiver of its privilege as to Dr. Shukh's five invention disclosures. The scope of the subject-matter waiver is limited, however, to only those communications between Dr. Shukh and Seagate that were made subsequent to Dr. Shukh's submission of the invention disclosures to Defendant and relate to those invention disclosures. Plaintiff's motion is otherwise **DENIED;** and

2. The attached Memorandum is incorporated herein by reference.

## MEMORANDUM

The District Court has set forth the relevant background facts of this case in its November 30, 2011 Order, 2011 WL 6003951 (Doc. No. 242); thus, the Court will not iterate them here. The Court, however, adds the following relevant additional facts.

In its November 30, 2011 Order, the District Court granted Seagate's motion for summary judgment as to its counterclaim for breach of contract and ordered that Plaintiff return all of the documents that Dr. Shukh had copied and taken from Seagate prior to and immediately following his notice of termination. In response to discovery requests from Plaintiff, Seagate has produced documents to Plaintiff, some of which include documents that were from the group of documents that Dr. Shukh had taken from Seagate. Particularly important here, Seagate produced Dr. Shukh's five invention disclosures over which Seagate previously had asserted privilege. But Seagate has continued to withhold a total of 575 documents on the basis of privilege, which are recorded on two privilege logs (the first privilege log corresponds to Seagate's reproduction of certain documents Dr. Shukh had taken from Seagate in violation of his employment agreement, and the second privilege log corresponds to Seagate's production of certain documents on Dr. Shukh's hard drive).

Plaintiff's motion pending before this Court seeks an order compelling Seagate to produce the privileged documents and to permit questioning about them. Plaintiff does not dispute the sufficiency of Seagate's privilege logs or that the 575 documents identified on the logs are relevant and privileged in the first instance. Instead, Plaintiff assumes for the purposes of this motion that they are relevant and privileged, but asks the Court to compel

their production based on various theories, most which he argues would require a blanket waiver or production of all of the documents on the privilege logs. Seagate opposes the production of the privileged documents listed on its logs under all of Plaintiff's theories.

Based on the following explanations, the Court concludes that Plaintiff's Motion to Compel Production of Documents and to Permit Questioning about Those Documents (Doc. No. 206), is granted in part only with respect to a limited subject-matter waiver, and denied in all other respects.

## I. Subject–Matter Waiver

Plaintiff argues that Seagate's intentional waiver of any attorney-client privilege covering Dr. Shukh's five invention disclosures constitutes a waiver as to the subject matter of "inventorship regarding the inventions involved in this case." (Doc. No. 239, Supplemental Mem. in Supp. of Mot. to Compel ("Pl.'s Suppl. Mem.") 16.) Seagate, on the other hand, argues that subject-matter waiver occurs only in the "unusual situation" where a party intentionally waives the privilege to gain strategic advantage in litigation and fairness requires disclosure of additional privileged documents, and that such situation is not present here. And even if subject-matter waiver is found, Seagate asserts that the scope of the subject-matter waiver should be very narrow. The Court concludes that under the circumstances here, Seagate's intentional production of the five Invention Disclosures does call for subject-matter waiver, but one that is limited only to those communications between Dr. Shukh and Seagate about the five invention disclosures.

Federal Rule of Evidence 502 states:

When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:

(1) the waiver is intentional;

(2) the disclosed and undisclosed communications or information concern the same subject matter; and

(3) they ought in fairness to be considered together.

Fed.R.Evid. 502(a). Each of these three elements is met here. As to the first and second elements, it is undisputed that Seagate intentionally waived the privilege as to Dr. Shukh's five invention disclosures, and that at least some of the undisclosed communications concern the same subject matter. As to the third element, however, Seagate does dispute that fairness dictates a waiver.

The purpose of the subject-matter waiver doctrine is "to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1303 (Fed.Cir.2006) (stating that "the overarching goal of waiver" is to prevent a party from using advice as both a sword and a shield); *see also In re Seagate Tech.*, 497 F.3d 1360, 1372 (Fed.Cir.2007) ("[Subject-matter waiver serves to] prevent ... the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones."). Here, like in *Eden Isle Marina, Inc. v. United States*, "[e]ssentially, the court's analysis boils down to determining whether fairness dictates the expansion of defendant's waiver[.]" 89 Fed.Cl. 480, 520 (2009).

Seagate argues that it is unfair to apply subject-matter waiver because Dr. Shukh breached his employment contract by taking these documents in the first

instance. But the remedy for the breach has already been given by the District Court. (*See* Doc. No. 242, 11/30/11 Order at 11) (granting summary judgment in favor of Seagate as to the breach of contract claim and ordering "specific performance in the form of Shukh returning the relevant documents"). The District Court also denied Seagate's motion for summary judgment (and granted Plaintiff's motion for summary judgment) as to Seagate's claims for conversion and replevin on the grounds that the heart of the action is a breach of contract. In so doing, the Court cut off Seagate's attempt to recover any separate damages for Dr. Shukh's action in taking the documents at issue from Seagate. This Court will not extend the remedy that the District Court has already provided Seagate for Dr. Shukh's actions in this privilege motion. In other words, this Court will not allow Seagate to selectively waive its privilege by producing Dr. Shukh's communications to Seagate disclosing his invention but then withhold Seagate's subsequent communications with Dr. Shukh about those same invention disclosures because of Dr. Shukh's breach of contract.

Seagate, however, also argues that it is unfair to apply subject-matter waiver because this "is not a situation where a party ... deliberately disclosed documents in an attempt to gain a tactical advantage." (Doc. No. 247, Seagate's Resp. to Shukh's Supplemental Br.) ("Seagate Suppl. Resp.") 8 (quoting *In re United Mine Workers of Am. Emp. Benefit Litig.*, 159 F.R.D. 307, 312 (D.D.C.1994).) This Court, however, is not so convinced. When Seagate waived privilege as to the five invention disclosures, it stated:

> Because Dr. Shukh already has actively inserted these invention disclosures into this case by disclosing them in pleadings, motions, and other proceedings in this case, Seagate has been left with no

choice but to rely on these disclosures in responding to Dr. Shukh's claims.

(Doc. No. 224, Decl. of Joseph Herriges in Supp. of Seagate's Opp'n to Shukh's Mot. to Compel ("Herriges Decl.") ¶ 2, Ex. G.) If this were true, then Seagate likewise would have "no choice" but to also rely on the other privileged documents that Plaintiff has referenced throughout this litigation. Yet Seagate has not offered to waive privilege as to any other privileged documents in this case. Therefore, this Court finds Seagate's argument somewhat disingenuous. Further, although Seagate states over and over that the invention disclosures are evidence that Dr. Shukh believes are "favorable to him," Seagate has not declared that it does not intend to rely on those very documents to support its case. In fact, Seagate indicates the opposite: "Seagate, of course, is permitted to rely on the Invention Forms to respond to Shukh's claims[.]" (Seagate Suppl. Resp. 10.) Because it appears that Seagate intends to use the five invention disclosures to support its case, this Court concludes that it is only fair to find a subject-matter waiver based on their disclosure.

The next question, however, is what should the scope of that subject-matter waiver be. "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed.Cir.2005). "The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Id.* However, "[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of

the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Id.* at 1349–50.

Plaintiff asserts that the scope of the waiver "should at least include all communications, whether internal or external to Seagate in regard to the consideration and treatment of inventorship—whether the inventorship of Dr. Shukh or of any other inventor, whether included on the patent applications or not." (Pl.'s Suppl. Mem. 16.) Plaintiff's suggested scope for the waiver is much too broad. *See Rowe Int'l Corp. v. Ecast, Inc.*, 241 F.R.D. 296, 302 (N.D.Ill.2007) (stating that "in determining the scope of a waiver of the attorney-client privilege, the Court must consider the overriding issue of fairness," and concluding that "expanding the scope of the waiver to include virtually every privileged communication related to all the patents-in-suit could be fundamentally unfair"); *United States v. Skeddle*, 989 F.Supp. 905, 909 n. 2 (N.D.Ohio 1997) ("Realizing that fairness is at the heart of the waiver issue, courts have generally held that the 'same subject matter' is to be viewed narrowly."). The "subject matter" of Seagate's intentional disclosure is Dr. Shukh's communications to Seagate in which he sent the company the five record of invention forms (each for a different invention). Seagate was able to utilize these invention disclosures in deciding whether to apply for patent protection and to keep a record of when the invention occurred. The Court concludes that the scope of the subject-matter waiver here is limited to only those communications between Dr. Shukh and Defendants that were made subsequent to Dr. Shukh's submission of the invention disclosures to Defendant and relate to those invention disclosures.

As explained above in the Court's order, the only waiver that this Court finds is the narrow subject-matter waiver just described. The Court denies Plaintiff's motion with respect to the various other waiver theories presented, as described below.

## II. Common–Interest Privilege

Plaintiff argues that he and Seagate had a common interest in patenting the inventions, and therefore while Plaintiff and Seagate have joint privilege against the rest of the world, there is no privilege as between Plaintiff and Seagate. Seagate asserts that the common-interest privilege only applies as an exception to the rule that the privilege is waived when a disclosure is made to a third party. Seagate contends that Plaintiff is actually making a joint-representation argument.

The attorney-client privilege does not attach absent an attorney-client relationship. The Court agrees with Seagate that its attorneys were not Dr. Shukh's attorneys at the time that Dr. Shukh worked for Seagate. And "the Federal Circuit has consistently held that a firm prosecuting a patent application on behalf of a company does not form an attorney-client relationship with any individual inventor required to assign his rights to the company." *Emory Univ. v. Nova Biogenetics, Inc.*, No. 1:06–CV–0141–TWT, 2006 WL 2708635, at *5 (N.D.Ga. Sept. 20, 2006) (citing *Univ. of W.Va. v. VanVoorhies*, 278 F.3d 1288, 1304 (Fed.Cir.2002)). Here, Dr. Shukh assigned his rights to any inventions to Seagate in his employment agreement. Therefore, the privilege to the documents at issue is Seagate's privilege, and it need not now disclose those documents to Dr. Shukh based on any interest he might have had in the patent prosecution. The common-interest doctrine would come into play if Seagate would have decided to share its privileged documents to a third party who shared a common interest with it. In that situation,

the attorney-client privilege that Seagate retained would not have been waived. *See Merck Eprova AG v. ProThera, Inc.,* 670 F.Supp.2d 201, 211 n. 4 (S.D.N.Y.2009) (stating that the common-interest doctrine "permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating" had the necessary common interest under the law).

## III. "At–Issue" Privilege

■ Plaintiff argues that because Seagate disputes that Dr. Shukh is an inventor to the inventions, it put the inventorship of the inventions at issue, and therefore cannot claim privilege on the only probative evidence available. Seagate argues that the "at-issue" exception does not apply because all it has done is deny Plaintiff's allegations. Seagate asserts that this denial is not an "affirmative act" and that it should be able to answer a complaint without risking waiver.

■ The at-issue exception applies where, "through [an] affirmative act, the asserting party has placed the protected information at issue by making it relevant." *Medtronic, Inc. v. Intermedics, Inc.,* 162 F.R.D. 133, 134–35 (D.Minn. 1995). The Court concludes that Seagate has not put inventorship at issue here. To "waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations." *Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095, 1098 (7th Cir.1987). This is all that Seagate has done—it has merely denied Dr. Shukh's allegation that he is the inventor. Accordingly, Plaintiff's motion is denied as to this ground.

## IV. Waiver by Delay

■ Plaintiff argues that because Seagate did not claim privilege for sixteen months, it should not be allowed to do so now. Seagate argues that it only delayed about six months, and that in any event it took reasonable measures to protect its documents. Seagate also argues that privilege cannot be waived in the case of employee theft.

For the same factual reasons that the District Court concluded in its November 30, 2011 Order (*see* Doc. No. 242, 11 /30/11 Order at 14–15) that Seagate's delay in seeking legal enforcement did not constitute waiver of its rights to enforce the document return provision of the employment contract, the Court concludes that Seagate's delay does not constitute waiver of its privilege over the documents at issue. *See Bowles v. Nat'l Ass'n of Home Builders,* 224 F.R.D. 246, 256 n. 13 (D.D.C. 2004) ("Those courts that have preserved the privilege in documents retained by a former employee have generally done so where there are at least some facts in the record to indicate that the employer had taken reasonable measures to prevent the disclosure of the document."). Further, "[t]o the extent documents can be viewed as stolen ... they should not lose the protection of the privilege." *In re Grand Jury Proceedings Involving Berkley and Co.,* 466 F.Supp. 863, 869 (D.Minn.1979).

## V. Unauthorized Practice of Law

Plaintiff argues that state rules require in-house counsel such as Seagate's General Counsel Ken Massaroni to be a member of the state bar in the state where he works. Plaintiff asserts that Mr. Massaroni is not registered or licensed to practice law in California or Minnesota, and therefore no privilege exists between Mr. Massaroni and the corporate client Seagate. Seagate argues that privilege attaches as long as

the lawyer is a member of the bar any jurisdiction, and asserts that Mr. Massaroni is admitted to the bar of the District of Columbia and the U.S. Patent Office, as well as the Indiana bar.

■ A company "may assert the privilege with respect to correspondence to or from its patent counsel despite the fact that that counsel was not admitted to the bar of the state in which he was located." *Paper Converting Mach. Co. v. FMC Corp.*, 215 F.Supp. 249, 251 (E.D.Wis. 1963). Accordingly, Plaintiff's motion to compel is denied on this basis.

## VI. Failure to Advise

Plaintiff argues that Seagate's lawyers had a duty to advise him to get his own lawyer. Because no one at Seagate advised him of this, Plaintiff says that any privilege that attached to conversations or communications that included Dr. Shukh also belonged to Dr. Shukh. Seagate argues that it had no affirmative duty to advise Dr. Shukh to find his own lawyer. And even if it did have a duty, Seagate argues that its lawyer's failure to do so may have been a violation of the rules of professional responsibility, but in any event it would not constitute a waiver of privilege.

■ The Court concludes that Seagate's attorneys had no duty to advise Dr. Shukh that they only represented Seagate because at the time of the various communications at issue, Seagate would not have known that Dr. Shukh's interests were adverse to Seagate's. Both Seagate's and Dr. Shukh's interests were aligned in that they both wanted to get the inventorship of the patents right. In addition, even if Seagate's attorneys should have clarified that they did not represent Dr. Shukh at some point, the fact that they failed to do so does not waive the company's privilege. *See United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 217 (2d Cir.1997) (con-cluding that the failure to clarify had no effect on the company's privilege).

## VII. Constitutional Argument

Plaintiff argues that Federal Rule of Evidence 501 is unconstitutional to the extent that it deprives inventors of the constitutional right to their inventions. In response, Seagate asserts that there is no legal basis for Plaintiff's argument.

There is no legal authority that supports Plaintiff's argument. And as Judge Tunheim stated in his November 30, 2011 Order:

> These arguments rest on the premise that Shukh is unable to prove his inventorship claims without these documents and that he cannot obtain the documents in another manner. To the contrary, Seagate has already provided nearly all of these documents in discovery[.]

(Doc. No. 242, 11/30/11 Order at 11.) By the time Plaintiff's motion was filed, Seagate had produced over 87,000 pages of documents to Plaintiff. The Court is not convinced that Dr. Shukh cannot sufficiently make his case without the subset of documents that remain privileged. Accordingly, the Court rejects Plaintiff's argument.