787 F.2d 796
 PREMISES KNOWN AS 225, 1468 AND 1470 STATLER TOWERS, 197
DELAWARE AVENUE, BUFFALO, NEW YORK, Operating as "Webster
Publishing Company, Ltd.", "Webster Home Mailing Service,
Inc.", "World Wide Employment Service, Inc.", "Government
Employment Service", "Home Typing Publishers", "Philadelphia
Formula a/k/a Freelance Writers", Appellants-Movants,
v.
UNITED STATES of America, Appellee-Respondent.
 No. 928, Docket 85-1470.
 United States Court of Appeals,
Second Circuit.
 Argued March 7, 1986.
Decided April 3, 1986.
 
 Norman E.S. Greene, Buffalo, N.Y. (Miller, Farmelo, Cane & Greene, of counsel), for appellants-movants.
 Brad Tyler, Buffalo, N.Y., Asst. U.S. Atty. for W.D.N.Y. (Salvatore R. Martoche, U.S. Atty. for W.D.N.Y., Martin J. Littlefield, Asst. U.S. Atty., of counsel), for appellee-respondent.
 Before FEINBERG, Chief Judge, and NEWMAN and WINTER, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 This case involves an effort by several related business firms to compel the government to provide copies at its own expense of voluminous records belonging to the firms but seized under a search warrant. Appellants argue that they cannot continue in business without at least copies of the records. While we have doubts concerning whether an order denying such a motion is appealable, we are convinced that the district court did not abuse its discretion in ordering the owners to bear reproduction costs once the government had offered them reasonable access to the documents for copying purposes. We therefore affirm the order of the district court.
 
 I.
 
 2
 In June 1984, several Postal Inspectors executed a warrant to search the offices of Webster Publishing Co., Ltd., Webster Home Mailing Service, Inc. and several affiliated firms, in an office building located in Buffalo, New York. The inspectors seized stationery, telephones and office equipment and supplies, as well as large quantities of documents. In support of the search warrant, a federal agent had submitted a sealed affidavit to the magistrate stating, among other things, that these items were necessary to a grand jury investigation of possible violations of the mail and wire fraud statutes. The businesses then moved under Rule 41(e) of the Federal Rules of Criminal Procedure before Judge John T. Elfvin of the United States District Court for the Western District of New York for return of all the seized material, and for disclosure of the affidavit underlying the search warrant. They contended that the search was illegal for lack of probable cause and for lack of particularity in the warrant's description of the items to be seized. In addition, the firms submitted an affidavit of George Hoskins, their common president, alleging that the government had effectively put them out of business by removing and retaining their records, supplies and equipment.
 
 
 3
 In September 1984, Judge Elfvin denied the motion. Based upon his in camera inspection of the underlying affidavit, which he refused to unseal, the judge concluded that there had been probable cause for issuance of the warrant. He also found the warrant sufficiently specific to pass constitutional muster. The judge therefore denied the businesses' request for the return of the property, but ordered the government to allow inspection and copying of the seized items and to "provide copies" of the records in its possession. The government moved for a stay and asked the court to clarify who was to pay for the photocopies, stating that the cost involved would exceed $10,000. It offered, however, to return office supplies and equipment after taking photographs of them, and to give the firms access to the other retained materials for inspection and copying purposes. In response, the businesses argued that the government's pre-indictment retention of records needed for doing business imposed upon the government the duty to furnish copies at its own expenses. In January 1985, while Judge Elfvin had the expenses motion under consideration, the firms and George Hoskins were indicted for mail and wire fraud.[1] The judge ruled in November 1985 that the government was not required to pay for copies. The businesses appeal from that order.
 
 II.
 
 4
 The government contends that Judge Elfvin's order regarding expenses is not appealable. In Standard Drywall Inc. v. United States, 668 F.2d 156 (2d Cir.), cert. denied, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982), we held that the denial of a Rule 41(e) motion for the return of property is appealable only if the movant has no connection to an actual or potential criminal case. See DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). Since appellants have been indicted, Judge Elfvin's denial of their Rule 41(e) motion for return of the records cannot fall within the limited class of Rule 41(e) orders appealable under Standard Drywall. However, Standard Drywall may not be dispositive. The firms do not attack the district court's refusal to order the return of the property, or its finding that the search and seizure were legal. The appeal is limited to the question of who is to bear the cost of copying documents needed both by the government and by their owners. While the problem arose in the setting of a Rule 41(e) motion, the Rule itself does not directly apply, since it does not address the costs question. Moreover, the stakes differ from those involved in a typical attempt to obtain interlocutory appeal of a Rule 41(e) or discovery motion, where appellate intervention may cause undue delay, interfere with discovery and even determine whether evidence will be admissible at trial. Appellants claim that asking the government to furnish copies at its own expense at this point poses none of these dangers, and that we must do so to allow the firms to stay in business. It also is unclear whether appellants could bring an independent action to recover duplication costs alone after conviction or acquittal on the indictment now pending against them.
 
 
 5
 There are reasonable arguments on both sides of the appealability question, but we need not resolve the controversy. Even assuming for the sake of argument that we have jurisdiction over the appeal, we are convinced that Judge Elfvin did not abuse his discretion in ordering that appellants must pay if they wish to have their records duplicated. Rule 41(e) provides only for return of property or its retention by the government, not for copying expenses. Accordingly, the judge correctly resorted to equitable principles to settle the costs issue, after determining that the original records should remain in the government's possession. The judge also reached a fair result. We know of no equitable principle which would require the government to pay for copies of records which it has no legal obligation to return, absent some extraordinary pre-indictment delay, once a district judge has determined that seizure of the items was proper. The firms argue that the courts have always assumed that the government should bear copying expenses even if it is entitled to retain the disputed property. They point to decisions denying Rule 41(e) motions on the ground that the owners suffered no serious harm, because the government had provided the owners with copies of essential records. See Offices of Lakeside Non-Ferrous Metals, Inc. v. United States, 679 F.2d 778, 780 (9th Cir.1982); Application of Sentinel Government Securities, 530 F.Supp. 793 (S.D.N.Y.1982); see also Standard Drywall, supra, 668 F.2d at 157 n. 2 (seriously questioning whether "a party could ever demonstrate irreparable harm" when government either provides copies or returns originals).
 
 
 6
 The cases may imply that the government had the duty to furnish appellants with copies of the more important records in order to prevent major hardship during the time preceding the indictment. However, they do not even by implication require that the government bear the expense of making this accommodation to the demands of appellants' business. Absent exceptional circumstances, we believe it proper to leave the burden of duplicating costs on a party who unsuccessfully moves before indictment for return of property seized under warrant. The government has a legal right to the evidence at that stage. Moreover, Rule 16 of the Federal Rules of Criminal Procedure suggests that the government need not pay to retain it. While Rule 16 governs criminal discovery and does not apply to pre-indictment motions such as those brought under Rule 41(e), it provides a useful analogy for resolving the costs issue. In the discovery context, Rule 16's clear import is that the defendants, at least nonindigent ones, must pay the cost of copying documents legally held by the government. See United States v. Freedman, 688 F.2d 1364 (11th Cir.1982). There is no reason not to follow the same general rule in the context of a failed pre-indictment challenge to the validity of a seizure.
 
 
 7
 Finally, appellants have not demonstrated any unusual circumstances which might require that an exception be made to this principle. While the firms did claim that depriving them of their records would put them out of business,[2] the government has consistently offered the firms access to the records for copying purposes. The firms could have solved their business problems by duplicating the necessary materials at their own expense at any time. They did not do so, and never argued in the district court that they were indigent or otherwise incapable of bearing the expense of making copies. We find that Judge Elfvin did not abuse his discretion in refusing to shift the burden of costs to the government.
 
 
 8
 We affirm the judgment of the district court. We are told that the criminal proceedings before Chief Judge Curtin, see note 1 supra, have been held up awaiting decision on this expedited appeal. Accordingly, we direct that the mandate issue forthwith.
 
 
 
 [1]
 The criminal proceeding has been assigned to Chief Judge Curtin of the Western District
 
 
 [2]
 With regard to this claim, it should be noted that, according to the government, the New York State Attorney General obtained a cease and desist order in May 1984 barring appellants from accepting monies from the sale of their products. Apparently, the order is still in effect