**PREMISES KNOWN AND DESCRIBED AS 55 WEST 47TH STREET, SUITES 620 AND 650, NEW YORK, NEW YORK Petitioner,**

v.

**UNITED STATES of America Respondent.**

**Misc. No. 19–150 (IBC).**

United States District Court, S.D. New York.

May 9, 1989.

Frederick J. Ludwig, New York City, for petitioner.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., U.S. Atty's Office, New York City by Henry J. DePippo, Asst. U.S. Atty., for respondent.

### MEMORANDUM

IRVING BEN COOPER, District Judge.

### RELIEF SOUGHT

Petitioner Diamond Selection (California) Ltd. (hereafter, "DSL"), occupant of the premises located at 55 West 47th Street, Suites 620 and 650, New York, New York, demands the return of its property that was seized pursuant to a search warrant by the United States Postal Inspection Service (hereafter, "the Government"). DSL seeks relief under Rule 41(e) of the Federal Rules of Criminal Procedure,[1] on the grounds that the Government violated DSL's Fourth Amendment rights by failing to: (a) specify the property that was to be seized with a sufficient degree of particularity, and (b) establish probable cause requisite for the issuance of the warrant. DSL also alleges that the Government abrogated its constitutional rights by conducting a search that was unreasonable because of the quantity of material seized and because it involved a

---

1. Counsel for petitioner does not indicate that it is making a Rule 41(e) motion. This omission is characteristic of petitioner's failure to ade- quately explain or support the legal basis for any of its claims.

"[s]earch of persons, their pockets, pocketbooks and briefcases without authorization in executing the warrant...." (*Petitioner's Reply Memorandum,* received in chambers September 6, 1988, p. 8.)

The Government opposes the motion.

## STATEMENT OF FACTS

On March 24, 1988, the Government, which was assisting a federal grand jury in investigating a fraudulent scheme for selling gemstones, obtained a search warrant from Barbara A. Lee, United States Magistrate for the Southern District of New York, in order to gather evidence of DSL's involvement in the fraudulent scheme alleged.

The warrant authorized the Government to seize from the premises known and described as 55 West 47th Street, Suites 620 and 650, New York, New York[2]:

"Gemstones, documents and records relating to the sale of gemstones, ... which constitute evidence or fruits of instrumentalities of the scheme and artifice to defraud using the United States mails in violation of Title 18, United States Code, Section 1341 and through interstate wire communications, in violation of Title 18, United States Code, Section 1343, as specifically described in the accompanying Affidavit for Search Warrant." (*Id.,* Exhibit A.)

Because the Government's search of DSL's premises was prompted by an on-going criminal investigation, the affidavit supporting the warrant was filed under seal; to date it remains so.

On March 25, 1988 at 9:45 a.m. eleven postal inspectors arrived at DSL. After searching Suites 620 and 650, they seized five gemstones and approximately fifty boxes of business records and documents which, according to the Government, constitute incriminating evidence of DSL's involvement in the alleged fraudulent gemstone scheme.

DSL's Office Manager Assistant Office Manager, President and Board Chairman were in DSL's main office in Suite 620 during the course of the search. Specifically, the Office Manager and Assistant Office Manager were present in the office when postal inspectors arrived at 9:45 a.m. At approximately 11:30 a.m. they were told they could leave. "[T]o ensure that no evidence was being removed from the cite [sic]," a postal inspector told them he would have to search their briefcases, pocketbooks and/or bags prior to their departure. (*Government's Memorandum,* p. 16.) The Government searched their personal effects, and the two employees left. No property was taken from either of them.

DSL's President arrived at the office approximately two hours after the Government had begun the search. Shortly thereafter, a postal inspector opened and examined the contents of the portfolio/pocketbook she (the President) was carrying. Nothing was taken from her.

Although the papers before us do not say when the Board Chairman arrived on the scene, it is undisputed that he was present during part of the Government's search. Around noon, a postal inspector searched his pockets "to ensure no evidence was being secreted by [him]." (*Id.*) The inspector's suspicions had been aroused because the Board Chairman had initially denied having any association with DSL, but was later observed rummaging through property in Suite 250 before it had been searched. The Government searched his pockets, but no property was taken from him.[3]

The Government claims that on the day the warrant was executed, postal inspectors informed DSL's principals that, after giving reasonable notice to the Govern-

---

2. "Petitioner identifies Diamond Selection (California) Limited ("DSL") as the occupant of the premises." (*Government's Memorandum of Law in Opposition to Petitioner's Motion Pursuant to Rule 41(e) Fed.R.Crim.P.,* filed August 18, 1988, p. 2, hereafter, "Government's Memorandum.")

3. Neither party indicates whether any of these four persons objected to this part of the search at the time it took place.

ment, DSL could inspect and/or copy all of the material that had been seized. DSL did not avail itself of this opportunity.

On April 12, 1988 DSL filed an ex-parte motion for an order to set aside the search warrant and for return of the seized gemstones, records and documents. Following a hearing on this motion, this Court directed counsel to attempt to reach a settlement regarding the disposition of the seized material. The Government claims it again offered DSL the opportunity to inspect and/or copy the seized business records and documents. Once again, DSL did not accept the offer.

Four months after the hearing, the Government advised DSL that it was willing to return approximately twenty-five to thirty percent of the seized material and that DSL could inspect and/or photocopy all documents remaining in the Government's custody. For the third time, DSL did not choose to take back, inspect, or copy any of its seized property. According to the Government, DSL instead asserted that the only acceptable compromise was for the Government to return all of the seized material and to admit that its search and seizure had been unlawful.

Nonetheless, the Government gave the company yet another chance to get back its property. On August 12, 1988 the Government wrote to counsel for petitioner offering to return sixty percent of the seized material. The papers before us do not indicate whether DSL ever responded to this letter.

As to why it did not accept any of the Government's offers to inspect, photocopy or take back its property, DSL states in its motion papers:

"Offers by the Government to permit [DSL] to photograph their own property ... were of little avail: the cost must be born [sic] by the claimants; photographing seized gemstones does nothing to regain lost business. The offer to return sixty per cent of the seized property is illusory: if the seizure is lawful, it cannot be just forty per cent lawful." (*Petitioner's Reply Memorandum*, p. 9.)

## DISCUSSION

DSL seeks the return of its seized property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, claiming that the Government violated its rights under the Fourth Amendment by failing to: (a) specify the property that was to be seized with the degree of particularity necessary, and (b) establish probable cause required for the issuance of the warrant. DSL also contends that the Government's search was unreasonable because of the quantity of the seized material and because "persons, their pockets, pocketbooks and briefcases [were searched] without authorization in executing the warrant...." (*Petitioner's Reply Memorandum*, p. 8.)

Although the Government contends that all of DSL's substantive Fourth Amendment claims lack merit, its basic position is that this Court should not rule on them at this time "[b]ecause of the ongoing grand jury investigation, the Court's determination of the validity of the warrant and search should be deferred until after indictment." (*Government's Memorandum*, p. 4.)

The Government maintains that a pre-indictment Rule 41(e) motion should be denied unless the petitioner can demonstrate that it would suffer irreparable harm if its seized property is not returned. According to the Government, DSL has failed to make such a showing.

Rule 41(e) states in pertinent part:

"A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized.... If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12." Fed.R. Crim.P. 41(e).

The Government's position accurately reflects established law regarding pre-indict-

ment Rule 41(e) motions. Such motions are denied unless the aggrieved party demonstrates that it would suffer irreparable harm if the Government retains the property it has seized. *Application of Sentinel Government Securities*, 530 F.Supp. 793 (S.D.N.Y.1982); *In re Two Search Warrants Issued March 14, 1986*, 110 F.R.D. 354 (E.D.N.Y.1986); *Application of Campola*, 543 F.Supp. 115 (N.D.N.Y.1982). *See also, Standard Drywall, Inc. v. U.S.*, 668 F.2d 156 (2d Cir.), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 *reh. denied*, 457 U.S. 1112, 102 S.Ct. 2917, 73 L.Ed.2d 1323 (1982) [4]

Although *Sentinel Government Securities* is the leading pre-indictment Rule 41(e) case in our District, its decision is based upon the reasoning and analysis set forth by the district court in *Standard Drywall*. *Sentinel*, 530 F.Supp. 793. In *Standard Drywall*, federal agents had obtained a warrant (supported by a sealed affidavit) to search the company's offices. Subsequently, they seized its books and records to present to a grand jury that was investigating criminal violations, allegedly committed by Standard Drywall and other construction companies. Before the grand jury had completed its investigation, Standard Drywall filed a Rule 41(e) motion for the return of its property.

The district court denied the motion, holding that a Rule 41(e) remedy should be invoked only when the petitioner has demonstrated that it would suffer "irreparable harm" if the seized material was not returned. Since Standard Drywall had failed to make such a showing, the court concluded that "it need not balance any violation

of Standard Drywall's Fourth Amendment rights against the need of the grand jury to consider all relevant evidence." *Standard Drywall*, 668 F.2d 156, 157. "In the absence of irreparable harm, the [d]istrict [c]ourt ... postponed consideration of the merits of [Standard Drywall's] Fourth Amendment claim until such time as the initiation of a criminal proceeding necessitates such consideration in connection with a motion to suppress, brought under Rule 12(b)(3)[.]" *Id.*[5]

## APPLICATION OF THE RULE 41(e) TEST

As previously indicated, a pre-indictment Rule 41(e) motion is denied unless the movant demonstrates that it would suffer "irreparable harm" if its seized property is not returned. Absent such a showing, courts defer consideration of a Rule 41(e) motion until the completion of a grand jury investigation, at which time an indicted party may seek relief by bringing a motion to suppress under Rule 12(b)(3). Fed.R. Crim.P. 41(e); *Sentinel*, 530 F.Supp. 793, 797. *See also, Two Search Warrants Issued March 14, 1986*, 110 F.R.D. 354, 356. We find that petitioner has failed to demonstrate that it would suffer irreparable harm if its seized property is not returned.

■ Although courts have not explicitly defined "irreparable harm", they have established a principle for determining it: a seizure causes irreparable harm when it deprives a business of "unique property or privileged documents" that are essential for the continued operation of its business. *Standard Drywall*, 668 F.2d 156, 157 n. 2; *Sentinel*, 530 F.Supp. 793, 797.

As *Standard Drywall* stated:

---

**4.** In a 1988 Rule 41(e) decision, *U.S. v. Premises Known as 25 Coligni Avenue, New Rochelle, N.Y.*, Magistrate Francis IV departed from precedent in holding that: 1) the Government has the burden for justifying deferral of a motion for return of seized property until after indictment, and 2) the plain language of Rule 41(e) motion "says nothing about irreparable harm," and in requiring the movant to make such a showing, the courts "have erected an unjustified barrier" to the prompt disposition of Fourth Amendment claims. *Coligni*, 120 F.R.D. 465, 468 (S.D.N.Y.1988).

To date, the Second Circuit has not affirmed the *Coligni* decision, and since we find the deci-

sion contrary to established precedent, we decline to follow it.

**5.** In affirming the lower court's decision, our Circuit limited its holding: that an order denying a Rule 41(e) motion is not appealable. *Id.* Although the Second Circuit did not focus on the "irreparable harm" standard as set forth by the district court, they did address it in a footnote; lower courts have subsequently relied on this as the applicable standard. *Id.; Sentinel*, 530 F.Supp. 793; *Two Search Warrants Issued March 14, 1986*, 110 F.R.D. 354.

"We seriously question whether, in the absence of seizure of some unique property or privileged documents, a party could ever demonstrate irreparable harm when the Government either provides the party with copies of the items seized or returns the originals to the party...." *Standard Drywall*, 668 F.2d 157, n. 2.

■ The record reveals that on four separate occasions DSL refused to accept the Government's offers to copy and/or take back its records and documents. Such disinterest in obtaining its own business records is incompatible with any claim DSL might make that the Government's seizure caused it damage beyond repair.

DSL does not establish that it was irreparably harmed merely because it would have had to bear the cost of photocopying its records and documents. Incurring such expenses is not irreparably damaging in and of itself. *See, Premises Known as Statler Towers, 197 Delaware Avenue, Buffalo, N.Y. v. U.S.*, 787 F.2d 796 (2d Cir.1986). Rule 41(e) mandates that the Government either return or retain property; it does not obligate the Government to furnish copies of the seized property, much less to pay for such copying. *Id.* at 798. Irreparable harm might be found if petitioners "were indigent or otherwise incapable of bearing the expense of making copies." *Id.* at 799. DSL has failed to demonstrate any unusual circumstance that would warrant a finding of irreparable harm due to financial need.

DSL further complains that "photographing seized gemstones does nothing to regain lost business." (*Petitioner's Reply Memorandum*, p. 9.) We note, however, that the Government retained only five gemstones as a result of its search, and we assume that five gemstones do not constitute a significant portion of the total inventory of a gemstone business. DSL provides no facts to challenge this assumption.

In addition, DSL does not provide us with any support for its allegation that the Government's seizure of its property adversely affected the operation of its business. Petitioner states that "[w]ithin a week, the claimants were effectively out of business and to curtail losses moved out of the premises altogether." *Id.* Nonetheless, we are not convinced that in fact the Government's actions necessitated such results.

If, in fact, DSL's primary concern had been the viability of its current or future business, it presumably would have accepted the Government's first offer to inspect and/or photocopy its property, an offer made at the very outset of this situation, on the very day the warrant was executed. Moreover, if its fundamental interest had been in shielding its own business from harm, DSL would certainly have accepted the Government's final offer allowing DSL to regain more than half of its seized property.

Instead, DSL pursued this suit, refused to accept the Government's repeated offers regarding the disposition of their property, and claimed that it would accept nothing less than an admission by the Government that its search and seizure had been unlawful. In so acting, DSL seemed far less concerned with recovering its property and running its business than it did about effectuating the consequence of a Rule 41(e) motion—which is to render such property "[in]admissable in evidence at any hearing or trial." Fed.R.Crim.P., Rule 41(e).[6]

Since DSL has failed to demonstrate that it would suffer irreparable harm if the Government retained its property, we hereby deny DSL's Rule 41(e) motion for return of its property. To do otherwise would enable DSL to needlessly obstruct the Government's grand jury investigation of its alleged fraudulent activities—an essential policy reason for denying pre-indictment Rule 41(e) motions.

Our denial of petitioner's motion does not mean that DSL is without relief if it has any legitimate claims against the Govern-

**6.** As noted in *Standard Drywall*, those cases dismissing appeals of Rule 41(e) motions "have focused on the reality of whether the purpose of the motion, however styled, is to keep seized evidence from a grand jury or other investigative agency." *Standard Drywall*, 668 F.2d 156, 158.

ment. As the Court in *Standard Drywall* stated:

> "The term of the grand jury is limited. If its inquiry results in indictment, the lawfulness of the seizure will be fully considered upon a motion to suppress, and any ruling adverse to the defendant will be reviewable upon appeal from a final judgment; if the grand jury declines to indict the movant, or adjourns without indicting it, its property will most likely be returned, and if not, it can initiate an independent proceeding for its return." *Standard Drywall*, 668 F.2d 156, 158.

Thus, if DSL's Fourth Amendment claims have any merit, petitioner will have ample opportunity to pursue them at the conclusion of the grand jury investigation.

One aspect of DSL's substantive claims, however, warrants comment at this time. DSL alleges that the "[s]earch of persons, their pockets, pocketbooks and briefcases without authorization in executing the warrant makes the search unreasonable." (*Petitioner's Reply Memorandum*, p. 8.)

Although this allegation is not formulated with precision,[7] it appears that DSL is claiming that this portion of the search is a prima facie Fourth Amendment violation because it involved a search of persons, which was not authorized by the Government's warrant to search DSL's premises.[8]

If this is, in fact, petitioner's position, we must note that DSL cannot seek Rule 41(e)

relief by asserting such a claim—for one obvious and simple reason: nothing whatsoever was seized during this allegedly "personal search". If no property was taken, it is self-evident that there is no property to be returned.

In light of our decision to defer consideration of DSL's substantive claims we shall not now determine whether the Government's warrant was sufficiently particularized, whether it was issued upon a finding of probable cause,[9] or whether the search was reasonable and, therefore, lawful. Accordingly, petitioner's motion is denied in all respects.

SO ORDERED.

---

7. In its *Memorandum,* petitioner asserts that "Apart from the facial voidness of the warrant, the *manner of executing the search was of such intolerable intensity and scope as to make it unreasonable.* This *included* ... search of persons not named in the warrant and found on the premises; and warrantless opening and search of briefcases and pocketbooks in their possession." (*Petitioner's Memorandum,* p. 4.) [emphasis added.] In its *Reply Memorandum,* however, DSL asserts under a separate point heading, that the "[s]earch of persons, their pockets, pocketbooks and briefcases without authorization in executing the warrant makes the search unreasonable." (*Petitioner's Reply Memorandum,* p. 8.)

8. In this connection, it must be noted that a search of personal effects, such as briefcases, pocketbooks, portfolios, etc. "does not clearly fall either within the realm of a personal search

or a search of the premises." *United States v. Micheli,* 487 F.2d. 429, 431 (1st Cir.1973). Courts "examine the relationship between the person and the place" in order to classify the particular search as a personal search or a search of the premises. *Id.* See also, *Walker v. United States,* 327 F.2d 597 (D.C.Cir.1963), *cert. denied,* 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 500 (1964).

9. DSL complains that "[d]espite request by counsel, no 'accompanying Affidavit' promised in the warrant has been produced[,]" (*Petitioner's Memorandum,* p. 5) implying that petitioner is also requesting that we unseal the affidavit in order to determine whether it had been issued upon a finding of probable cause. Although we reviewed the sealed affidavit *in camera,* in keeping with our determination that DSL's substantive claims must be deferred, the affidavit shall remain sealed until later proceedings.