**UNITED STATES of America, Plaintiff,**

v.

**A BUILDING HOUSING A BUSINESS KNOWN AS MACHINE PRODUCTS COMPANY, INC., Defendant.**

No. 89–M–118.

United States District Court, W.D. Wisconsin.

May 10, 1990.

Daniel Bach, Asst. U.S. Atty., Madison, Wis., for plaintiff.

Bradley D. Jackson, Foley & Lardner, Madison, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

This matter is before the court on defendant's objections to the Report and Recommendation entered by the United States Magistrate on March 30, 1990, in which the magistrate recommended denial of defendant's motion for return of seized property brought pursuant to Fed.R.Crim.P. 41(e). After reviewing the report, the briefs, and the defendant's objections, I conclude that the magistrate's recommendation is correct and that defendant has failed to establish the predicate to its motion, that it will be harmed irreparably if the seized materials are not returned to it. Therefore, I will adopt the magistrate's proposed findings of fact and conclusions of law and will follow his recommendation to deny defendant's motion.

Defendant styled the case as it appears in the caption. Ordinarily, a motion for return of property is brought as a civil action with the allegedly aggrieved entity or individual characterized as plaintiff or petitioner. Because the error in characterization does not affect the burden of proof (it remains on the entity asserting the right to the return of the seized property) or any other aspect of the litigation, I have left the caption as defendant prepared it.

Defendant is seeking the return of business papers seized during the execution of a search warrant on November 14, 1989 and now kept in the custody of the Department of Defense in northern Illinois. Although the department has permitted defendant to photocopy all of the seized materials and has returned certain materials not relevant to its inquiry into defendant's manufacture of torsion bars for the military, defendant contends that it will be irreparably harmed if this court does not entertain its challenge to the legality of the warrant.

The magistrate held that defendant's motion is governed by equitable principles: the movant must show it will be injured irreparably unless the seized materials are returned. This is the majority rule. Its purpose is obvious. It provides a remedy for injured persons who cannot operate their businesses without the property that was seized or who have a right to property that has been held by the government for a long period of time for no apparent reason. At the same time, the irreparable injury requirement prevents the rule from being used to frustrate an ongoing government investigation of possible wrongdoing.

In this case, defendant is unable to show any irreparable injury arising from the seizure and retention of its business records. It has been allowed to copy all of them. Its real motive in bringing the motion was to have the search declared illegal. That is not the purpose for which Rule 41(e) was enacted.

For example, defendant contends that it will suffer irreparable injury because the Department of Defense is relying upon the affidavit that served as the basis for the search warrant to determine that defendant is not a responsible contractor under Department of Defense regulations and is ineligible to be awarded contracts. In addition, defendant asserts that it is suffering business losses as a result of plaintiff's illegal conduct. In fact, defendant's alleged injuries are the result of the investigation of suspected wrongdoing, not the consequence of the search and seizure.

I agree with the magistrate that defendant has failed to show that it will suffer irreparable injury if its property is not returned.

## ORDER

IT IS ORDERED that the findings of fact and conclusions of law proposed by the United States Magistrate in his Report and Recommendation entered on March 30, 1990, are ADOPTED as the court's own and defendant's motion for the return of business records seized from its place of business on November 14, 1989 is DENIED.

## REPORT AND RECOMMENDATION

JAMES GROH, United States Magistrate.

Machine Products Co., Inc. (Machine Products) moves, pursuant to Fed. R.Crim.P. 41(e), for the return of property, principally business records, which was seized from its place of business pursuant to the execution of a search warrant on November 14, 1989. The search is challenged on the grounds (1) that the affidavit in support of the warrant contained material false statements and was otherwise insufficient to establish probable cause for the issuance of the warrant; (2) that the warrant failed to comply with the Fourth Amendment's particularity requirements; and (3) that its execution by federal agents was overbroad. Because movant has failed to demonstrate that it will be irreparably injured if the relief sought is not granted, I will recommend, pursuant to 28 U.S.C. § 636(b)(1)(B), that the motion be denied.

### Proposed Findings of Fact

For the purpose of this motion only, I find the following facts:

On November 13, 1989, the undersigned issued a warrant to search "[a] building housing a business known as Machine Products Co., Inc. 525 North 2nd Street, LaCrosse, Wisconsin" upon the sworn application of Special Agent Michael P. Thompson of the Defense Criminal Investigative Service (DCIS), Office of Inspector General, United States Department of Defense.[1] The warrant authorized the seizure of the following property:

Documents and records incident to the manufacture of torsion bars by Machine Products for sale to the United States, its allies, and prime contractors of the United States Department of Defense. These documents and records include, but are not necessarily limited to, production inspection records, quality inspection records, reliability testing records, Form DD 250, *Material Inspection and Receiving Reports,* job sheets/cards, gauge instrument certifications, invoices, purchase orders, computer disks, and such other magnetic storage media as may exist, internal memoranda, correspondence, work papers, contract files, tape recordings of meetings, minutes of meetings, card files, calendar records, contract performance records, heat code records and documents, endurance test records, and statistical process control records. All of which may be evidence of violations of 18 U.S.C. § 1001, 18 U.S.C. § 287, 18 U.S.C. § 1341, 18 U.S.C. § 641, 18 U.S.C. § 371, and 18 U.S.C. § 286.

The warrant was executed at 8:45 a.m., November 14, 1989, and a large quantity of materials was seized. (See Supp. Inventory.)

Agent Thompson's affidavit averred that he was investigating Machine Products for fraud in relation to the performance of contracts to manufacture torsion bars for armored vehicles, such as tanks, for the Department of Defense (DOD) and defense contractors (¶ 3).[2]

Defense contractors are required to keep extensive records pertaining to the contract, including manufacturing activities, costs and testing. These must be made available to DOD upon request (¶¶ 5a–b, f). These records are maintained on Machine Products' business premises (¶¶ 10, 11). All manufacturing and testing must be per-

---

1. The warrant appears at Dkt. #2. Agent Thompson's affidavit is at Dkt. #1. The return and inventory are attached to the warrant. A supplemental inventory was filed on December 1, 1989 (Dkt. #12).

2. Unless otherwise indicated, all references are to Agent Thompson's affidavit. (Dkt. #1).

formed in accordance with the specifications of the contract documents and the requisite documentation and compliance certification maintained (¶¶ 5b, c).

Manufactured goods are delivered to the government in lots. At that time government representatives inspect the items and the production, inspection and testing records. If acceptable, the representative "buys" the lot by signing form DD 250 which serves as evidence of performance by the contractor. A similar procedure is followed with subcontractors (¶¶ 5d–e).

Machine Products has, and has had, contracts to manufacture torsion bars, aircraft components, jet engines and ammunition loading tubes for the DOD. Machine Products is also a subcontractor for several corporations under contract with DOD and sells spare parts directly to DOD (¶ 6).

In about September, 1989, Agent Thompson interviewed Dan Woodliff, the former Torsion Bar Department Manager for Machine Products, who had come forward with information regarding irregularities in the company's business practices (¶ 7). Woodliff reported that since at least 1978, Machine Products had been unable to manufacture torsion bars to specification, and had shipped substandard bars to its customers (¶ 8a). When DOD inspection was required, Machine Products would present a conforming lot to inspectors. When the inspectors signed the DD 250 (signifying formal acceptance of the lot) the paper work would be switched to a substandard lot which would then be shipped in place of the conforming lot (¶¶ 8a, e). This practice, according to Woodliff, was followed as a matter of regular company policy with the approval of senior executives of the company.

According to Woodliff, Machine Products also engaged, surreptitiously, in the unauthorized practice of soaking oversized bars in acid to reduce them to the size required by the specifications (¶ 8b).[3]

Machine Products also altered dimensional gauges which were used to monitor compliance with specifications. The gauges were used by government inspectors who were thus led to believe that substandard bars were actually in compliance with the contract (¶ 8c). Fictitious test data were also assembled and placed in the manufacturing records because Machine Products did not have the equipment to perform all the tests the specifications demanded (¶ 8d).

Woodliff stated that the foregoing practices were followed as a matter of unwritten company policy from the time of his arrival in 1978 (¶¶ 8a, 9).[4]

On October 31, 1989, Agent Thompson met with a confidential informant who had been employed by Machine Products for 15 years and still worked for it. The informant confirmed the information provided by Woodliff as to the fraudulent practices (¶ 10). He estimated that 40% of the records pertaining to the testing of torsion bars were fraudulent. He also stated that between 1978 and December, 1988, not more than 80% of the bars in any given shipment of bars were actually in compliance with specifications (¶ 10).

Following the execution of the warrant, Machine Products filed the instant motion (Dkt. # 3) which, in addition to the challenges to the sufficiency of the affidavit and the overbreadth of the warrant, alleges that the agents knowingly seized documents not described in the warrant (particularly those pertaining to aircraft parts) and that such "flagrant disregard" for the limitations of the warrant transformed it into an impermissible general warrant. As to the latter points, affidavits of various employees and attorneys who were present

---

**3.** Woodliff recalled a specific instance in early 1988 when about 600 bars were soaked at a warehouse owned by a Mr. Bessenger, a local businessperson. Woodliff advised that the soaking had been requested by Joseph Webb, the company president, and David Gaynor, the vice president. They directed an employee, Ron White, to supervise it (¶ 8b).

**4.** Woodliff had direct knowledge of these activities throughout his employment. He followed the practices when he became manager in 1986, because not to have done so would have resulted in his dismissal. Woodliff was dismissed for unrelated reasons in 1988, after he protested (¶ 9).

at the time of the search were submitted in support. (See Dkt. Nos. 5, 6, 7, 8, 9, 10 and 11.) The general thrust of these affidavits [5] was that the agents executing the warrant persisted in the seizure of certain documents in certain locations after having been informed by company employees or attorneys that the documents either did not pertain to torsion bars or pertained instead to aircraft parts which were not covered by the warrant.

At the request of movant, an expedited hearing was held shortly after the filing of the motion to consider certain immediate problems arising out of the seizure and removal of such a substantial volume of movant's working papers. (See *e.g.* Aff. of Richard Esenberg (Dkt. # 10).) Largely by agreement of the parties, an order was entered (Dkt. # 15) (1) granting movant full and free access to all the seized materials for examination and copying, and (2) directing the return to movant of the originals and any copies of documents relating to the manufacture and sale of aircraft parts. Paragraph 5 of the order specifically provided for an expedited hearing on the application of either party should any irreconcilable controversy arise. No such hearing has yet been requested.

It does not appear that any formal charges have been lodged against Machine Products at this point. However, it does appear that the matter (or aspects of it) is the subject of a grand jury investigation. (Aff. of Daniel Bach, ¶ 5 and Ex. 1 (grand jury subpoena); Dkt. # 25)

## CONCLUSIONS OF LAW

By this motion movant presents a variety of Fourth Amendment challenges to the issuance and execution of the warrant for the search of its business premises. The government urges, however, that movant's claims cannot be considered at this time because it has failed to establish that it will suffer irreparable injury if the relief sought is not granted. Movant, on the other hand, contends that the plain language of Rule 41(e) requires nothing more than that it prove that its property was unlawfully seized and that it is lawfully entitled to the possession of it.[6]

Movant's argument has surface appeal, but is contrary to the clear weight of authority. So far as I am aware, every appellate court to have considered the question has held that a Rule 41(e) motion to return property is governed by equitable principles. See *Angel–Torres v. United States,* 712 F.2d 717, 719–20 (1st Cir.1983); *Matter of Search of 4801 Fyler Ave.,* 879 F.2d 385, 387 (8th Cir.1989); *Richey v. Smith,* 515 F.2d 1239, 1245 (5th Cir.1975); *United States v. Martinson,* 809 F.2d 1364, 1367 (9th Cir.1987) (citing cases); *Floyd v. United States,* 860 F.2d 999, 1002–1003 (10th Cir.1988). See also *Premises Known as 55 West 47th St., N.Y. v. United States,* 712 F.Supp. 437, 439–440 (S.D.N.Y.1989). A leading treatise has summarized the rule as follows:

> Motions to return are treated with caution and restraint, and the motion will be dismissed for want of equity if the moving party has an adequate remedy other-

**5.** That of Jere Wiedenman (Dkt. # 8) is an exception. It pertains to an alleged material omission from the warrant affidavit—a meeting between representatives of movant and DOD in December, 1988, at which company officials disclosed approximately the same irregularities described in the warrant affidavit.

**6.** Rule 41(e) of the Federal Rules of Criminal Procedure states:

(e) *Motion for return of property.* A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the

property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for a hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

As the acknowledged owner of the property, Machine Products is obviously "a person aggrieved" within the meaning of Rule 41(e) and has standing to initiate the motion for its return.

wise or if he cannot show irreparable injury.

3 Wright, *Federal Practice and Procedure: Criminal 2d*, § 673 at 762–763 (1982) (footnote omitted).[7]

The Court of Appeals for the Seventh Circuit has not addressed the question. However, its treatment of a related issue (government's prolonged and unexplained failure to return *lawfully* seized property) in *Mr. Lucky Messenger Serv. Inc. v. United States*, 587 F.2d 15, 16–17 (7th Cir.1978) strongly suggests that the court will follow the prevailing view.

The only authorities cited by movant for the contrary proposition are isolated district court decisions from New York and Ohio, which are clearly contrary to the trend of authority. For example, *Application of First United Financial Corp.*, 620 F.Supp. 1450, 1452 (E.D.N.Y.1985), from which movant quotes at length (Rep.Br. p. 9 (Dkt. # 27)) was relied upon by the trial court (677 F.Supp. 1083 (D.Colo.1987), but specifically rejected by the Tenth Circuit in *Floyd*, a case of first impression. 860 F.2d at 1006. Nor has it been followed within the Eastern District of New York. See *In re Two Search Warrants Issued March 14, 1986*, 110 F.R.D. 354, 357–358 (E.D.N.Y.1986). To the contrary, *Two Search Warrants*, as do other cases in the Second Circuit, recognizes as authoritative the implication in the widely cited Second Circuit decision in *Standard Drywall, Inc. v. United States*, 668 F.2d 156, 157 (2d Cir.), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982), that a showing of irreparable harm is a necessary predicate to the consideration of the merits of a motion under Rule 41(e). See also *Premises Known as 55 West 47th Street, N.Y. v.*

*United States*, 712 F.Supp. 437, 439–440 (S.D.N.Y.1989).[8]

Under the circumstances, I have no doubt that the Court of Appeals for this circuit would follow the prevailing view as discussed above. This result also conforms to the teaching of *Richards v. Local 134 Intern. Broth. of Elec. Wkrs.*, 790 F.2d 633, 636 (7th Cir.1986), which requires the district courts of the circuit to give "substantial weight" and "appropriate deference" to the decisions of other circuits. Accordingly, I conclude that movant may not maintain its motion in the absence of a showing it will be irreparably injured if its property is not returned.

▬ The burden of proof on a motion to return property is upon the movant. *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir.1987); *Matter of Search of 4801 Fyler Ave.*, 879 F.2d 385, 388 (8th Cir.1989). The government's principal contention is that movant has not, and cannot, establish the requisite irreparable injury because the government has already returned to movant either the originals or copies of all the property seized pursuant to the search.[9] I agree. Absent unusual circumstances not present here, the return of the originals or copies of seized documents defeats a claim of irreparable harm. No harm can result if there is no deprivation in fact. As the Court of Appeals for the Second Circuit observed in similar circumstances:

> The Government offered to provide to Standard Drywall copies of all of the documents seized from its offices. The District Court stated that this offer undermined Standard Drywall's contention that it could not conduct business without these documents and refuted any claim of irreparable harm. *We seriously*

---

7. Some circuits also require a movant to show a callous disregard for Fourth Amendment rights as an additional precondition to the exercise of equitable jurisdiction. See *e.g. Richey*, 515 F.2d at 1243–44; *4801 Fyler Ave.*, 879 F.2d at 387. *Contra: Floyd*, 860 F.2d at 1003. Under the circumstances, separate consideration of this issue is unnecessary.

8. In *55 West 47th St.*, Judge Cooper not only embraced the general rule and the authority of

*Standard Drywall*, but expressly declined to follow another of the cases relied upon by movant, *United States v. Premises Known as 25 Coligni Avenue, etc.*, 120 F.R.D. 465 (S.D.N.Y.1988) (Rep.Br. p. 11 (Dkt. # 27)), "since we find the decision contrary to established precedent." *55 West 47th St.*, 712 F.Supp. at 440, n. 4.

9. I found this to be true and it does not appear to be disputed by movant.

*question whether, in the absence of seizure of some unique property or privileged documents, a party could ever demonstrate irreparable harm when the Government either provides the party with copies of the items seized or returns the originals to the party and presents the copies to the jury.*

*Standard Drywall,* 668 F.2d at 157 n. 2 (emphasis added). *Accord: Angel–Torres,* 712 F.2d at 720 ("petitioners have shown no special need for immediate possession of the materials.") *Imperial Distributors, Inc. v. United States,* 617 F.2d 892, 895–896 (1st Cir.), *cert. denied,* 449 U.S. 891, 101 S.Ct. 249, 66 L.Ed.2d 116 (1980); *Offices of Lakeside Non–Ferrous Metals v. United States,* 679 F.2d 778, 780 (9th Cir.

1982) (copies of all materials furnished to movant); *First Nat'l Bank of Tulsa v. United States Department of Justice,* 865 F.2d 217, 221 (10th Cir.1989).[10]

█ In a closely-related context the Court of Appeals for the Seventh Circuit has had occasion to comment upon the incongruity of movant's position.

Suffice it to say that where the government has offered to provide copies and the movants have not even attempted to show that copies are inadequate to solve the difficulties alleged in the affidavit, we cannot find that the motion is directed primarily toward the return of seized property.

*Matter of 949 Erie Street, Racine, Wis.,* 824 F.2d 538, 541 (7th Cir.1987).[11] *Accord,*

10. I cannot accept Machine Products' unsupported argument that the failure to return the documents themselves will cause irreparable harm because some of them contain confidential business information. For this claim, reference is made to paragraph 15 of the second affidavit of Joseph Graves, movant's Manager of Industrial Relations, which states in its entirety:

> 15. Among the vast amount of the documents retained by government as related to Machine Products Company's torsion bar operations, a substantial portion contains trade secrets, sensitive commercial and financial information, and confidential personnel information. Of particular concern, I have been unable to locate the employment contract of Joe Webb, Chief Executive Office of Machine Products Company, which is a confidential document.

(Dkt. #23) It may be acknowledged, in principle, that documents, like tangible property, may have intrinsic value or importance which might justify Rule 41(e) relief even though copies had been provided. It is evident, however, that Mr. Graves' conclusory statement is inadequate to meet movant's burden. *4801 Fyler Ave.,* 879 F.2d at 388; *see also United States v. Hamm,* 786 F.2d 804, 807 (7th Cir.1986). Moreover, the threatened injury is not caused by any deprivation of movant's physical possession of the documents, but rather arises out of a concern for the security of the documents or their contents. Having in mind that Rule 41(e) jurisdiction is unique and is to be exercised sparingly, *Mayo v. United States,* 425 F.Supp. 119 (N.D.Ill.1977), a simpler and equally effective remedy may be found in a motion for a protective order to guard against misuse or improvident disclosure by the government.

11. Much discussion is devoted to the applicability of *949 Erie Street* to this motion. *949 Erie Street* is concerned exclusively with the jurisdic-

tion of the Court of Appeals to consider appeals from the denial of Rule 41(e) motions. The opinion is very helpful, however, in illuminating the distinction between motions to suppress and motions for the return of property.

> The case holds that an appeal will not be entertained unless
>
> (1) the motion is solely for the return of property; and (2) the motion is in no way tied to a criminal prosecution *in esse* against the movant.

*949 Erie Street,* 824 F.2d 538 at 540. The reason for the rule which traces to *DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), is the avoidance of the piecemeal litigation of pretrial evidence questions arising out of criminal investigations and prosecutions.

> [W]ithout such limits, Rule 41(e) Motions could become "instruments of harassment" jeopardizing the availability of essential evidence.

*949 Erie Street,* 824 F.2d at 540 (citing *DiBella,* 369 U.S. at 129, 82 S.Ct. at 659). When formal charges have been filed, the appropriate vehicle for the resolution of these questions is a motion to suppress under Fed.R.Crim.P. 12(b)(3). That motion is viewed as a step in the criminal proceedings, *Angel–Torres,* 712 F.2d at 719, and the order is not appealable (except by the government) until after final judgment. *949 Erie Street,* 824 F.2d at 540. However, until charges are filed, the motion to return property under Rule 41(e) is the only mechanism provided by the Rules by which the lawfulness of a taking of property may be contested. Unlike the suppression motion, the motion to return is viewed more as a civil equitable proceeding to recover personal property, *Martinson,* 809 F.2d at 1367. However,

> ... [i]f the motion [to return property] is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial....

*United States v. Regional Consulting Services,* 766 F.2d 870, 873 (4th Cir.1985).

Machine Products claims, however, that it has been, and will continue to be, harmed by the adverse publicity which has accompanied the search and investigation and, particularly, by any indictment that may be returned against it based upon the use of the materials seized under the warrant.[12]  I find this argument to be unconvincing.  No one wishes to be the subject of a criminal investigation, even less to be named in an indictment.  It is apparent that the escutcheon, to use movant's phrase, of even the least worthy citizen would arguably be tarnished by that sort of publicity, and it is equally apparent that no standard exists against which such insults could be measured.  In short, if movant's contention were accepted, the irreparable injury requirement would be rendered virtually meaningless, as it would be the rare person who could not show some potential injury to personal or commercial reputation.[13]  This is the precise holding of the Court of Appeals for the Eighth Circuit in *Matter of Search of 4801 Fyler Ave.,* 879 F.2d 385 (1989), with which I am in full accord:

> Fed.R.Crim.P. 41(e).  Whether this exclusionary consequence necessarily attends the granting of the motion is, however, in doubt in some jurisdictions.  See *United States v. One Residence and Attached Garage,* 603 F.2d 1231 (7th Cir. 1979); *Richey,* 515 F.2d at 1245.  In any event, the exclusion of the evidence is clearly secondary to the restoration of the property.
>
> If an indictment or information is filed at any time during the pendency of the motion, it is automatically converted into a motion to suppress under Rule 12 by virtue of the last sentence of Rule 41(e).  But if there is no criminal proceeding pending at the time the order is entered, the moving party would, but for *949 Erie Street,* have an unrestricted right to appeal since the order is not interlocutory.  If appellate jurisdiction were accepted, it is obvious that no criminal prosecution dependent upon that evidence could go forward until the appeal had been concluded.
>
> This opportunity to frustrate the progress of a criminal investigation invites abuse.  It is to meet that abuse that the Court of Appeals requires the private litigant to establish not only that the motion is not related to any existing criminal prosecution of the movant, but also that the motion is "solely" (or at least primarily) for the return of property.  While the *949 Erie* test does not determine the jurisdiction of the district court to entertain a Rule 41(e) motion in

> [I]t is completely plausible for Kiesel to claim that if the seized evidence results in an indictment that would not otherwise have issued, real harm will occur.  Former business contacts may evaporate, future business may suffer, and a general taint may attach to Kiesel's owners and employees.
>
> .     .     .     .     .
>
> As the government correctly points out, however, if we were to allow the mere threat of future prosecution to constitute irreparable harm these procedures would not be extraordinary, but quite ordinary.  Every potential defendant could point to the same harm, thereby invoking the equitable powers of the court.  This has not been the practice of the past, and we see no reason to alter that course now.  We therefore must conclude that the possible stigmatization of defending oneself in a criminal trial is an insufficient harm to justify the district court's use of its equitable powers.

*Id.* at 389.[14]

Movant having failed to demonstrate that it will suffer irreparable injury if its

the first instance, it does serve to emphasize what Rule 41(e) (and 12(b)(3)) makes clear—that the function of a Rule 41(e) motion is to secure the return of property.  When a movant has been provided with either the originals or copies of all the documents and no other need for their return appears, the purpose for the motion, and the need for the restoration relief, becomes suspect.  As in *949 Erie Street,* the conclusion becomes virtually inescapable that the movant has some other purpose in mind in prosecuting the motion—specifically, to prevent the use of the documents as evidence against it. That, however, is the function of a motion to suppress.

12.  Movant further notes that the return of an indictment would afford the basis under the applicable regulation for the suspension (temporary disqualification) of movant from government contracting.  48 CFR §§ 9.403 and 9.407–2(b).

13.  It will also be noted that the exclusive focus of this argument is upon the suppression, rather than the return, of evidence.

14.  The decision in *4801 Fyler Ave.* deprives *Matter of Search of Building T etc.,* 684 F.Supp. 1491, 1495 (E.D.Mo.1988), upon which movant

property is not returned, its motion may not be considered on the merits, and it must therefore be denied. *4801 Fyler Ave.*, 879 F.2d at 388–89 (exercise of equitable jurisdiction held abuse of discretion).

To summarize, we believe that the issues of this case were decided prematurely. Since Kiesel could not justify the exercise of equitable jurisdiction, it must wait until an indictment is brought, and challenge the search in a suppression hearing.

*Id.* at 390. *First Nat'l Bank of Tulsa*, 865 F.2d at 221–222. Absent such injury, a court has no occasion to balance the competing interests of the government and the movant. See *Standard Drywall Inc.*, 668 F.2d at 157; *Offices of Lakeside Non-Ferrous Metals*, 679 F.2d at 780.

Since DSL has failed to demonstrate that it would suffer irreparable harm if the Government retained its property, we hereby deny DSL's Rule 41(e) motion for return of its property. To do otherwise would enable DSL to needlessly obstruct the Government's grand jury investigation of its alleged fraudulent activities— an essential policy reason for denying pre-indictment Rule 41(e) motions.

*55 West 47th St., N.Y.*, 712 F.Supp. at 441.

█ This result does no violence to movant's rights. When movant is formally charged, it will have full opportunity to have its constitutional claims heard and determined on a motion to suppress under Rule 12.[15] *4801 Fyler Ave.*, 879 F.2d at 389. See *First Nat'l Bank of Tulsa*, 865 F.2d at 221; *Standard Drywall*, 668 F.2d at 158. This does not operate as a license to the government to prolong its investigation indefinitely. *Offices of Lakeside Non-Ferrous Metals*, 679 F.2d at 780. It is well established here and in other circuits that an aggrieved person may seek the return of its property after a reasonable time if no charges are forthcoming and the govern-

ment cannot demonstrate that an investigation is actually being pursued. See *Mr. Lucky Messenger Serv. Inc. v. United States*, 587 F.2d 15, 17–18 (7th Cir.1978) (unexplained retention of seized funds for 18 months established irreparable harm); *Standard Drywall*, 668 F.2d at 158–159; *Sovereign News v. United States*, 690 F.2d 569, 577–578 (6th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Martinson*, 809 F.2d at 1369–1370 (cases cited); *Angel–Torres*, 712 F.2d at 720.

For the foregoing reasons, it will be recommended that defendant's motion be denied without prejudice to its renewal in appropriate circumstances.

RECOMMENDATION

IT IS RESPECTFULLY RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that the motion of Machine Products Co., Inc. for the return of property be DENIED without prejudice.

ENTERED this 30 day of March, 1990.

relies, of whatever support it might otherwise have provided for its position. Nor am I persuaded to the contrary by the dictum from *Hunsucker v. Phinney*, 497 F.2d 29, 33 (5th Cir.1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975), or by *In re Fried*, 161 F.2d 453, 458–59 (2d Cir.); *cert. dismissed*, 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384 (1947). The Eighth Circuit declined to follow *Fried* in *4801*

*Fyler Ave.*, and its authority here is suspect as it is a sharply divided opinion and involves a Fifth Amendment claim.

**15.** Some courts view this opportunity as an adequate remedy at law which itself defeats the exercise of equity jurisdiction. See *Angel–Torres*, 712 F.2d at 720.