UNITED STATES of America

v.

Jason TYREE

No. CRIM. A. 05–728.

United States District Court,
E.D. Pennsylvania.

March 29, 2006.

John M. Gallagher, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

Jason Tyree, Philadelphia, PA, pro se.

Benjamin Brait Cooper, Federal Defender Association, Allentown, PA, for Jason Tyree.

## MEMORANDUM

DALZELL, District Judge.

In this criminal case, a routine defense motion for discovery has erupted into an unedifying dispute between the two principal institutions involved in the conduct of criminal litigation in this Court. As will be seen, a dispute over who bears the cost of (at most) $50.00 in pretrial copying charges implicates important, if somewhat numbing, issues arising out of Congress's allocation of taxpayer funds.

*Background*

On March 16 of this year, the Grand Jury returned a Superseding Indictment that charges Jason Tyree with three counts of armed robbery, three counts of using and carrying a firearm during a crime of violence, and one count of armed bank robbery. Just over a week later, Tyree filed a motion to compel discovery in which he requests that we compel the Government to pay the cost of reproducing the evidence it has disclosed to Tyree. In his motion, Tyree contends that the United States Attorney's new no-pay policy violates Fed.R.Crim.P. 16 and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

As we learned at a hearing yesterday, some 500 pages of documents are involved. At ten cents a page, this devolves into the question of who should bear a $50.00 expense.

The history behind this problem is undisputed. Traditionally, absent extraordinary circumstances, the Government would, for the asking, supply copies of all documents defense counsel requested.[1] The exception to this traditional courtesy would be complex cases involving thousands of documents where, typically, the Government and the defense would come to some kind of reasonable accommodation as to the expense of copying.

The Government extended these courtesies not only to individual defense lawyers who were either retained or appointed under the Criminal Justice Act, but also to the Federal Community Defender Office for the Eastern District of Pennsylvania. As is generally known, the Federal Defender's operation is Congressionally funded as part of the Defender Services portion of the appropriation Congress annually makes to the Federal Judiciary.[2] The local United States Attorney's Office is also ultimately at the mercy of Congress through its appropriations to the United States Department of Justice. Thus, both institutions involved in the dispute before us are wholly funded by the United States taxpayer.

In addition to trial counsel, at yesterday's hearing the Chief of the local United States Attorney's Criminal Division, Linda Dale Hoffa, reported in open court that her office has seen, in recent years, a reduction of about twenty percent in its allocation from Main Justice, with further reductions anticipated in the future. As a result, her office has engaged in significant belt-tightening, including reductions in the number of professional and support staff from their historic highs a few years ago.

Part of this belt-tightening was the decision Ms. Hoffa and her colleagues reached shortly after the first of the year to end the traditional courtesy of paying for copying charges for discovery in criminal prosecutions. The per-page copying costs started at $0.25 to conform with the cost schedule established by the Board of Governors of the Federal Reserve to cover banks' subpoena reimbursement costs, but was sonn reduced to $0.12.[3] At the hearing yesterday, Ms.

---

1. The Government's policy, while most civil, was not entirely selfless. To the extent busy and often overextended defense lawyers are spared the nitty-gritty of copying, the case moves that much faster, reducing the need for continuances and other court intervention.

2. To put a fine point on it, the Federal Defender receives a direct grant from the Defender Ser-

vices section of the Administrative Office of the United States Courts, which, in turn, receives its annual appropriation for this purpose from Congress.

3. See ltr. of Feb. 10, 2006 from Linda Dale Hoffa to Hon. Stewart Dalzell. We received this letter in our capacity as Chairman of the Court's Crim-

Hoffa agreed, on the Government's behalf, to reduce the charge to ten cents a page when the Federal Defender's senior supervising attorney, Felicia Sarner, pointed out that the ceiling on Criminal Justice Act copying charges was ten cents a page. Here, however, the Government's retreat ended. Although Ms. Hoffa reported that the Government regretted the end of its traditional grace, fiscal realities, in her view, left the Government no choice but to pass on this cost to defendants.

The Federal Defender rightly points out that, as far as its clients are concerned, these defendants are, by definition, indigent. Putting aside the legal arguments described below, the Federal Defender's institutional representative, Ms. Sarner, also stressed that the Government has other options regarding the allocation of the funds it gets from Congress. Rather than shift copying costs, for example, Ms. Sarner contends that the Government could reduce the number of Assistant United States Attorneys on the payroll and bring fewer prosecutions.[4] The Government counters that it has already elected not to fill the positions of Assistant United States Attorneys who have left the office for other opportunities. Beyond this, however, the Government at the hearing did not seem receptive to Ms. Sarner's modest proposal for further reductions of professional personnel.

*Legal and Policy Analysis*

■ Contrary to Tyree's reading of Fed. R.Crim.P. 16, instead of requiring the Government to reproduce a defendant's written or recorded statements, the Rule merely requires the Government to "disclose to the defendant, and make available for inspection, copying, or photographing," the items listed in Rule 16(a)(1)(B). *See also* Rule 16(E), which requires the Government, upon the defendant's request, to "permit the defendant to inspect and to copy or photograph, books, papers, documents, data [etc.] . . . .". Rule 16(F) affords the same "to inspect and to copy" language regarding results or reports of physical or mental examinations or of any scientific tests or experiments within the Government's possession or control.

By contrast, Rule 16(G) imposes upon the Government the affirmative duty to "give to the defendant a written summary of any testimony" under Fed.R.Evid. 702, 703 or 705 that the Government "intends to use . . . during its case-in-chief at trial."

Thus, a fair examination of the four corners of Fed.R.Crim.P. 16 reveals no affirmative duty on the Government *to pay* for copying. Rather, its only duty is to make documents *"available* for inspection, copying or photographing" or to allow the defense "to inspect and to copy or photograph" documents and things.

■ To be sure, as the Eleventh Circuit has noted, the "discovery provided under Rule 16, while not expressly stated, should be read and applied with a limitation of reasonableness." *United States v. Freedman,* 688 F.2d 1364, 1366 (11th Cir.1982). Thus, where a defendant is not indigent, "he should not be permitted to transfer the cost of his discovery requests to the [G]overnment," *id.* at 1367. *See also Premises Known as Statler Towers v. United States,* 787 F.2d 796, 798 (2d Cir.1986) ("In the discovery context, Rule 16's clear import is that the defendants, at least non-indigent ones, must pay the cost of copying documents" that the Government holds).

■ The draftsmen of Rule 16 not having imposed any fairly cognizable payment duty on the Government,[5] the question then be-

---

inal Business Committee, a cup we pass to Judge Brody three days hence.

4. To be sure, Ms. Sarner did not directly recommend layoffs of Assistant United States Attorneys, but only that the office could "curtail the number of prosecutions that they bring." N.T. of Mar. 28, 2006 at 26. But the only way curtailing the number of prosecutions could affect the marginal costs of the United States Attorney's Office would be to reduce the payroll, which is otherwise a fixed cost. That is to say, the abstract reduction in prosecutions has no cost consequence absent the reduction of those who prosecute on behalf of the Government.

5. Of course, the Judicial Conference, through its Rules Committee, could impose such a duty if Congress did not object. There are, as we observe *supra* in note 1, public interests in favor of amending the Rule to impose the duty of copying

comes whether *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) supplies such a duty. *Brady* requires that the Government *disclose* exculpatory evidence, but there is no language in Justice Douglas's opinion for the Court that obliges the Government to reproduce it at its expense for requesting defendants. Specifically, *Brady* merely held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *See id.* at 87, 83 S.Ct. 1194. It does not expressly or by fair inference require the Government to pay for copying such evidence. Tyree's *Brady* argument is therefore unavailing.

Although it seems to us that the Government is under no legal obligation under either *Brady* or Rule 16 to pay the costs of copying, what is very much in play here is what the Eleventh Circuit referred to as a "reasonableness" question. In the institutional context before us now, we are presented with a policy question of which federal institution should bear the burden of copying costs for indigent defendants in federal prosecutions. The contenders are, in fiscal reality, the United States Department of Justice and the Article III Branch, the latter through the Defender Services part of its appropriation from Congress each year. In our view, the ultimate arbiter of such a policy question must, each year, be Congress.

But once Congress has spoken, and the result is the problem we face now, the Courts' overriding priority is to assure that every indigent defendant has as level a playing field as the Constitution requires, and to which the Courts have been most sensitive at least since the Supreme Court decided *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Since the Chief Justice and the Judicial Conference have succeeded, at least this year, in persuading Congress of the need for additional funds, we are optimistic (at least until experience demonstrates otherwise) that the Defender Services appropriation will prove to be adequate for the additional costs our local Federal Defender will incur as a result of the Government's decision to end the courtesy it has extended in the past.

Of course, if actual experience proves our optimism to be unwarranted, we may revisit this question. We could do so directly in the context of particular cases or, more grandly, in the Article III Branch's appeals to Congress for adequate funding. As Congress has been receptive to the Courts' requests in recent years, however, we believe our Federal Defender's superb services to its clients will not be impaired by our decision at this time.

We therefore will not impose Rule 16–based copying costs upon the Government except where, as in Rule 16(G), the Rule itself explicitly does so. Tyree's motion will thus be denied in the Order that follows.

*ORDER*

AND NOW, this 29th day of March, 2006, upon consideration of defendant's motion to compel discovery (docket entry # 35), which supersedes defendant's *pro se* motion for discovery of evidence filed on March 3, 2006 (docket entry # 21), and the Government's response thereto, and after a hearing yesterday, and for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

1. Defendant's *pro se* motion is DENIED AS MOOT; and

2. Defendant's counseled motion is DENIED.

on the Government in the cases of indigent defendants.